1  JEFFREY D. WOHL (Cal. State Bar No. 96838)
   JULIE A. WILKINSON (Cal. State Bar No. 209180)
2  RISHI N. SHARMA (Cal. State Bar No. 239034)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
3  55 Second Street, 24th Floor
   San Francisco, California 94105-3441
4  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100
5  jeffwohl@paulhastings.com
   juliewilkinson@paulhastings.com
6  rishisharma@paulhastings.com

7  Attorneys for Defendant
   Rite Aid Corporation
8

9                          UNITED STATES DISTRICT COURT

10                        NORTHERN DISTRICT OF CALIFORNIA

11

12 | PRAG TIERNO, individually and on behalf of all others similarly-situated, | No. C-05-02520-TEH |
13 | | **DECLARATION OF JAMES TONEY, JR. IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
   | Plaintiffs, | |
14 | vs. | |
15 | | Hearing Date: July 17, 2006 |
   | RITE AID CORPORATION, and DOES 1 through 25, inclusive, | Time: 10:00 a.m. |
16 | | Courtroom: 12, 19th Floor |
   | | Judge: Hon. Thelton E. Henderson |
17 | Defendants. | |
   | | Complaint filed: May 9, 2005 |
18 | | Trial date: None set |

19
20
21
22
23
24
25
26
27
28

LEGAL_US_W # 53705824.1

TONEY DECL. IN OPP TO CLASS CERT.
U.S.D.C., N.D. Cal., No. C-05-02520-TEH

I, James Toney, Jr., declare:

1. I am a Regional Vice President of Rite Aid Corporation ("Rite Aid"), the defendant in this action. I make this declaration in opposition to plaintiff Prag Tierno's motion for class certification. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. I began working for Rite Aid (or its predecessors) approximately twenty-seven years ago. I have been a Regional Vice President for Rite Aid since 1992. Over my career at Rite Aid (and its predecessors), among other positions, I was a Store Manager for approximately two years and a District Manager for approximately two years.

3. I currently serve as the Regional Vice President for Region 41. I have been responsible for Region 41 since January 2006. Region 41 encompasses Rite Aid stores in California in Southern California, including those in the San Fernando Valley and those extending up to the Monterey Peninsula to the northwest, Fresno to the northeast, and Ontario to the south; as well as Rite Aid stores in Las Vegas, Nevada. Within Region 41, there are eight districts and I directly supervise the District Managers assigned to each of those districts. Within each district are approximately 25 to 31 stores, with one Store Manager assigned to each. The Store Managers report directly to the District Manager for their district. In all, I currently oversee approximately 209 Rite Aid stores, 182 of which are in California.

4. No two stores within my region are alike. They all vary based on sales volume, size, geographic location, staffing levels, staff performance/competency, store configuration (including specialized departments such as pharmacy, General Nutrition Centers ("GNC"), one-hour photo processing, garden, nursery, and ice cream), hours of operation, number of entrances to a store, customer base, merchandise selection, managerial style of the Store Manager, and security risk factors.

5. A Store Manager's principal duties and responsibilities require the exercise of independent judgment and discretion. The Store Manager is in charge of the entire store, including overseeing and directing all front-end store operations. Store Managers also indirectly supervise all pharmacy operations at their store, which are directly supervised by Pharmacy Managers.

6. A Store Manager's duties include: interviewing and hiring employees; promoting

employees; evaluating job performance (including giving job coaching and training, as well as formal written reviews); adjudging misconduct and calibrating appropriate discipline; participating in terminating employees; directly supervising all front-end employees and indirectly supervising all pharmacy employees; managing and controlling store profit and loss, including but not limited to cash handling and practices, payroll, inventory levels, shrink, maintenance, and other operational needs as required; managing and controlling cash handling and payroll; handling personnel and customer issues as they arise; prioritizing and delegating tasks; managing daily workforce levels; making judgment calls regarding how merchandise should be displayed or moved from the backroom; and directing hourly staff to accomplish objectives.

7. Which particular duties a Store Manager performs, and how he or she performs them, is for the Store Manager to determine day by day. How each particular Store Manager performs his or her job, and which particular duties he or she performs each day, differ by individual and vary based on a number of factors, including those listed in paragraph 4 above. For example, a Store Manager in a store with a higher sales volume must be able to plan and organize for a faster-paced business; this usually means that the Store Manager will have a greater number of associates, and it requires that the Store Manager spend more time planning and ensuring that the store is properly staffed to meet customer needs (which vary depending upon day of the week and time of the day), that the Store Manager ensures that a sufficient number of associates are assigned to functions such as resetting and restocking merchandise, and ensuring that associates are trained to do the same. In contrast, a Store Manager at a lower sales volume store will generally have fewer associates, and therefore must spend more time prioritizing which tasks need to be accomplished and when, and spend more time ensuring that the store's associates are able to multi-task.

8. Additionally, a Store Manager in a store in an urban environment faces challenges different than their counterparts in suburban stores. For example, a Store Manager in an urban store needs to delegate more time and attention to security issues; there is often a greater turnover of associates (and a lesser qualified pool of applicants) and therefore the Store Manager needs to spend more time on interviewing, hiring and training; urban stores tend to have a faster-paced environment with smaller dollar value purchases; there are often cultural and language variations in the customer

population that the Store Manager needs to be aware of, which will effect both store inventory (types and quantities of products carried) and appropriate employee training to reflect those varying client needs.

9. It is Rite Aid's expectation, and my personal expectation as Regional Vice President, that all Store Managers will spend more than 50% of their time performing leadership and other managerial responsibilities. Failure to do so constitutes a failure to adequately perform their job duties. I regularly instruct the District Managers whom I supervise that they should be communicating this expectation to the Store Managers within their districts. I also communicate this expectation directly to Store Managers when I make periodic visits to their stores and at other meetings with the Store Managers and District Managers. Store Managers are also provided with several planning and organizational tools which assist them in keeping the proper balance, including forms which are designed to assist the Store Manager in identifying and assigning specific critical job responsibility to associates (*e.g.*, identifying and utilizing associates with certain skill sets to accomplish tasks maximizing that associate's skill set), training the associates to do those job duties, and allowing the Store Manager to set expectations regarding the timeframe in which those assigned duties should be accomplished. Based on both my prior personal experience as a Store Manager and District Manager, as well as my current experience as Regional Vice President, if a Store Manager is spending half or more of his or her time performing non-managerial tasks, he or she would not be able to adequately perform their job duties according to Rite Aid's standards.

10. Plaintiff Prag Tierno worked as a Rite Aid Store Manager at Store 5495 (Santa Fe Springs), which was within my region during the time Prag was a Store Manager. I am familiar with Prag; I met him on several occasions when I visited his store. I remember Prag to be a poor performer who lacked consistency. On a few occasions when visiting Prag's store, I—along with his District Manager, John Petit—discussed with Prag the issues he needed to improve upon, including the way he ran his store, the way he allocated work, the expectations he had for his associates, and the lack of cleanliness and organization of his store. I recall that Prag seemed to have his own agenda and did not take directions or assistance in improving in the areas we identified.

11. Prag was terminated from Rite Aid in December 2004 for violation of company policy

1  based on his continued sale of large quantities of glucose meters at markdown prices to a reseller,
2  despite having been instructed by his District Manager to discontinue doing so.
3      I declare under penalty of perjury of the laws of the United States that the foregoing is true and
4  correct and was executed on June 20, 2006, at Sherman Oaks, California.

*/s/ James Toney, Jr.*
James Toney, Jr.