# EXHIBIT A-1

RECEIVED
OFFICE OF THE CLERK
U.S. COURT OF APPEALS
PUBLIC INFORMATION UNIT

No. _____

2006 SEP 14 PM 4: 27

FILED_____
DOCKETED____ DATE  INITIAL

# UNITED STATES COURT OF APPEALS
## NINTH CIRCUIT

PRAG TIERNO, individually and on behalf of others similarly situated,
*Plaintiff/Appellee,*

vs.

RITE AID CORPORATION,
*Defendant/Appellant.*

Appeal from the United States District Court
for the Northern District of California
No. C-05-02520-TEH, Honorable Thelton E. Henderson
(Order Entered on August 31, 2006)

## PETITION FOR PERMISSION
## TO APPEAL FROM ORDER
## GRANTING CLASS CERTIFICATION

JEFFREY D. WOHL
JULIE A. WILKINSON
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Attorneys for Defendant/Appellant
Rite Aid Corporation

# TABLE OF CONTENTS

*Page*

Table of Authorities ...................................................................................... iii

CORPORATE DISCLOSURE STATEMENT ......................................................v

QUESTION PRESENTED .................................................................................1

RELIEF SOUGHT ...........................................................................................1

STANDARD FOR GRANTING THE PETITION ..................................................1

GROUNDS FOR GRANTING THE PETITION ....................................................2

I.  STATEMENT OF RELEVANT FACTS ......................................................7

    A.  Plaintiff and His Claims ......................................................................7

    B.  Plaintiff's Motion for Class Certification .............................................7

    C.  Rite Aid's Opposition to Class Certification .......................................8

    D.  The District Court's Order Granting Class Certification ...................10

II.  THE DISTRICT COURT MADE A SERIES OF
    MANIFEST ERRORS THAT SHOULD BE CORRECTED
    ON APPEAL ......................................................................................10

    A.  The District Court Erroneously Gave No Weight to
        the More Than 1,000 Store Manager Self-Audits,
        the 82 Store Manager Declarations That Verified the
        Self-Audits, and the LECG Observational Study,
        All of Which Plaintiff Did Not Rebut .................................................11

    B.  The District Court Erred in Not Recognizing the
        Substantial Variation Shown by the Self-Audits and
        the Observational Study ....................................................................14

# TABLE OF CONTENTS
*(cont'd)*

*Page*

C. The District Court Erroneously Relied on Evidence of Rite Aid's Standardized Policies and Processes, Its Historical Classification of Store Managers as Exempt, and a Misreading of Rite Aid Executive Testimony to Find a Predominance of Common Issues........................................15

D. The District Court's Order Did Not Demonstrate the Superiority of the Class Action Device Because It Failed to Adopt a Trial Plan and None Was Proposed by Plaintiff...........................................................................16

III. THIS COURT ALSO SHOULD PROVIDE GUIDANCE ON THE UNSETTLED AND FUNDAMENTAL ISSUE OF WHAT PROOF IS NECESSARY TO OBTAIN CLASS CERTIFICATION IN MANAGERIAL MISCLASSIFICATION CASES, ABOUT WHICH THE DISTRICT COURTS ARE IN CONFLICT.................................................................17

APPENDIX A: Order Granting Class Certification, *Prag Tierno, individually and on behalf of all others similarly situated, Plaintiff v. Rite Aid Corporation, Defendant*, U.S.D.C., N.D. Cal., No. C-05-02520-TEH (Aug. 31, 2006)

APPENDIX B: Sample Rite Aid Self-Audit

APPENDIX C: Samples of Charts of Rite Aid Self-Audits and Observational Study Made Part of the Record Before the District Court

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................2

*Blair v. Equifax Check Serv., Inc.*,
  181 F.3d 832 (7th Cir. 1999) ......................................................................17

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ......................................................1, 11, 17, 20

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)..............................................................................6, 20

*Delgado v. McTighe*,
  91 F.R.D. 76 (E.D. Pa. 1981) ......................................................................12

*Donovan v. Burger King Corp.*,
  672 F.2d 221 (1st Cir. 1982)........................................................................15

*Donovan v. Burger King Corp.*,
  675 F.2d 516 (2d Cir. 1982) ........................................................................15

*Dukes v. Wal-Mart, Inc.*,
  222 F.R.D. 189 (N.D. Cal. 2004) ..........................................................11, 12

*Dunbar v. Albertson's, Inc.*,
  141 Cal. App. 4th 1422 (2006)....................................................5, 15, 17, 19

*Gibson v. County of Riverside*,
  181 F. Supp. 2d 1057 (C.D. Cal. 2002)........................................................12

*Hawkins v. Comparet-Cassani*,
  251 F.3d 1230 (9th Cir. 2001) .......................................................................1

*In re Home Depot Overtime Cases*,
  Riverside Superior No. JCCP4229 (Feb. 2, 2006) ........................................19

*Murray v. Stuckey's Inc.*,
  939 F.2d 614 (8th Cir. 1991) ......................................................................15

## TABLE OF AUTHORITIES
### (*cont'd*)

*Page*

*Nordquist v. McGraw-Hill Broad. Co.*,
    32 Cal. App. 4th 555 (1995) ............................................................2

*Pittsburgh Press Club v. United States*,
    579 F.2d 751 (3d Cir. 1978) ..........................................................12

*Ramirez v. Yosemite Water Co.*,
    20 Cal. 4th 785 (1999) ..............................................................2, 13

*Sav-on Drug Stores v. Superior Court*,
    34 Cal. 4th 319 (2004) ............................................................11, 19

*Sepulveda v. Wal-Mart Stores, Inc.*,
    2006 WL. 1540444 (C.D. Cal. 2006) ........................................6, 18

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................16

*Yapp v. Union Pacific Railroad Co.*,
    302 F. Supp. 2d 1030 (E.D. Mo. 2004) ........................................12

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................3

**Statutes, Rules, Regulations and Wage Orders**

California Industrial Welfare Commission Wage Order 7-2001 ..............................2

8 Cal. Code Regs. § 11070 ........................................................................2

Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 9 ..............................19

Fair Labor Standard Act ........................................................................20

Fed. R. Civ. Proc. 23 ..................................................................*passim*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellant Rite Aid Corporation hereby states that it has no parent corporation and that no publicly held corporation owns ten percent or more of its stock.

## QUESTION PRESENTED

Whether under Fed. R. Civ. Proc. 23(f), the Court should grant to Rite Aid permission to appeal from the District Court's order granting class certification where Rite Aid has made a preliminary showing that the District Court's order (1) displays several manifest errors; (2) presents an unsettled and fundamental issue of law relating to class actions; and (3) likely represents a "death knell" by unduly pressuring Rite Aid to settle regardless of the merits of plaintiff's claims.

## RELIEF SOUGHT

This Court should grant interlocutory review of the District Court's class certification order and, after merits briefing, vacate it.

## STANDARD FOR GRANTING THE PETITION

Review of class certification decisions will be most appropriate when (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). While class certification decisions are discretionary, "[a] court abuses its discretion if its certification order is premised on legal error." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001). And because class certification decisions directly

implicate the constitutional rights of defendants and putative class members, the Supreme Court has directed the courts of appeals to rigorously scrutinize district courts' compliance with Rule 23's requirements.  *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612-19 (1997).

### <u>GROUNDS FOR GRANTING THE PETITION</u>

Under California wage-and-hour law, a manager must spend more than half of his or her time on exempt job duties to be exempt from overtime compensation (the "50%-plus test").  *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 797, 802-03 n.5 (1999).[1]  An individualized inquiry usually is required because employees can hold the same job but perform it differently, making some exempt and others non-exempt.  *See, e.g.*, *Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555, 568 (1995) (plaintiff was found to be non-exempt, even though in earlier case his predecessor—who performed same job—was held to be exempt).

In this case, plaintiff contends that Rite Aid improperly classified as exempt a proposed class of more than 1,100 current and former Store Managers.  To win class certification, it was plaintiff's burden to prove, after "rigorous analysis,"

---

[1]     There are five other requirements for the executive exemption from overtime, including management of the enterprise; supervision of two or more employees; authority to hire or fire or to make personnel recommendations that are given particular weight; customary and regular exercise of discretion and independent judgment; and a salary that is at least two times the state minimum wage for full-time employment.  Industrial Welfare Commission Order No. 7-2001, 8 Cal. Code Regs. § 11070.  In this case, only the 50%-plus test is at issue.

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), that as to the 50%-plus test, common questions predominate over individual ones.

But in his motion, plaintiff presented no evidence of how any class member spent his or her time, other than his own (discredited) deposition testimony about what duties he performed as a Store Manager before Rite Aid fired him for sales fraud.[2]  Plaintiff instead relied on proof that Rite Aid historically has classified Store Managers as exempt; that there is a finite list of duties that Store Managers perform; and that Rite Aid has standardized policies and processes for the operation of its stores.  This, plaintiff argued, was enough to carry his burden of proving predominance of common issues.  Indeed, plaintiff went so far as to contend that what job duties individual managers perform and the time they spend on their duties is not even relevant to the question of class certification, and instead must await trial on the merits.  That contention turns Rule 23(b)(3) on its head: a class cannot be certified if the central liability question is an individualized one.  If plaintiff were correct, then every employee of any national retailer would be assured of winning class certification, since all national retailers have standardized policies and processes, a result never intended under Rule 23 principles.

_____

[2]     Plaintiff's lack of classwide evidence was extraordinary.  Counsel for Rite Aid have handled scores of wage-and-hour class actions and never have seen a class certified in a managerial misclassification case in which the plaintiff put in no evidence of how class members spend their time.  That alone makes the District Court's order highly suspect.

In response to plaintiff's motion, Rite Aid did not just rest on plaintiff's lack of proof.  Rite Aid presented overwhelming evidence that while most (~85%) Store Managers spend more than half of their time on exempt job duties, there is tremendous variation among them on the time they spend on managerial and non-managerial duties.  Rite Aid submitted more than 1,000 Store Manager self-audits about their work time, buttressed by declarations from 82 Store Managers attesting to the integrity of the self-audit process and the truthfulness of their responses; a consultant's observational study of how 12 randomly selected Store Managers spent their time during a typical workweek; and 15 additional day-in-the-life and other in-depth declarations from current and former Store Managers (the latter testifying against interest) and Rite Aid executives.  Rite Aid also documented substantial differences among the close to 600 California Rite Aid stores, which contribute to the variation in how managers perform their job duties.  Because each manager's time is spent so differently, Rite Aid showed, no *one* manager's experiences accurately reflect the exempt-status of any *other* manager.  In his reply, plaintiff did *nothing* to rebut this evidence; he simply repeated that the class could be certified because of Rite Aid's standardized policies and processes.

In its order certifying the class, the District Court erroneously excused plaintiff's failure of proof and disregarded Rite Aid's massive showing.  The District Court's reasons for rejecting Rite Aid's proof were legally unfounded—

that the self-audits and observational study were not worthy of credence because they were "litigation-driven products," and that it does not matter that the Store Managers' reported managerial job duty percentages ranged from 27% to almost 100%, with virtually no two the same—and factually misplaced—that Rite Aid executives testified all Store Manager jobs are the same, and the self-audits and the observational study actually showed that managers performed their jobs similarly.

The District Court's view of the evidence may have been skewed by its erroneous understanding of how to apply the 50%-plus test in a managerial misclassification case.  The District Court said it is irrelevant whether the mix of job duties is different among class members.  But as numerous other courts have recognized, if there is substantial variation among the managers in the duties they perform and how they spend their work time, the case cannot be tried by representative evidence because no sample fairly will represent the whole.

Further compounding its error, the District Court did not adopt a trial plan (indeed, none was proposed by plaintiff), thereby failing to show how a class action trial would be superior to other means of resolving this case.  In affirming the denial of certification in a managerial misclassification case strikingly similar to this one, the California Court of Appeal recently held in *Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1432 (2006), that "it is not sufficient…simply to mention a procedural tool; the party seeking class certification must explain how

the procedure will effectively manage the issues in question." Neither plaintiff nor the District Court did so here.

By granting Rite Aid's petition, this Court can do more than just correct the District Court's error in certifying a class. It also can resolve a pending intra-circuit split (involving the Central District which came to the opposite conclusion from the District Court here on similar facts[3]) by articulating the proper standards for class certification in a managerial misclassification case.

The need for those standards is acute. As the Court is well aware, courts in California and throughout the Ninth Circuit have been flooded with wage-and-hour class actions. With enactment of the Class Action Fairness Act of 2005, more of these cases are being heard by the district courts. In the absence of appellate guidance, courts have been inconsistent in deciding whether to certify a managerial misclassification case where the issue is how managers spend their time.

The problem of inconsistent outcomes is magnified in class action cases. As the U.S. Supreme Court has recognized, because the burden of trying a class action is so enormous and costly, class certification (whether or not that certification was appropriate) sounds a death-knell for most cases. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978). Yet this reality paradoxically ensures that this critical issue will evade review unless addressed on interlocutory appeal.

---

[3] *See Sepulveda v. Wal-Mart Stores, Inc.*, 2006 WL 1540444 (C.D. Cal. 2006), discussed *infra* at 18.

For these reasons, as more fully explained below, the Court should grant this petition and allow Rite Aid to appeal the District Court's certification order.

## I.   STATEMENT OF RELEVANT FACTS

### A.   Plaintiff and His Claims.

In December 2004, Rite Aid fired plaintiff Prag Tierno, a short-term Store Manager in Southern California, for sales fraud.[4]  Plaintiff then sued Rite Aid for allegedly misclassifying all other Store Managers in California as exempt from the overtime requirements in violation of California wage-and-hour law.  Specifically, plaintiff alleged that he and the members of the proposed class spent more than half of their time on non-exempt job duties, thereby entitling them to overtime pay and penalties for missed meal and rest periods, among other relief.

### B.   Plaintiff's Motion for Class Certification.

In support of his class certification motion, plaintiff submitted only his own thoroughly discredited deposition testimony attesting to how he spent his work time at Rite Aid.[5]  Plaintiff presented *no evidence* of how other Store Managers

---

[4]  Plaintiff was fired for concealing unauthorized discount sales of Rite Aid products to a local reseller.  The District Court refused to credit Rite Aid's substantial evidence of plaintiff's sales fraud, even though plaintiff himself *never* directly disputed it.  Indeed, all plaintiff alleged was that he was not *told* why he was being fired.  Yet the District Court inexplicably equated this with a denial of the fraud itself.  *See* Order at 5-6.

[5]  Rite Aid showed that when plaintiff applied for a job after leaving Rite Aid, he told the new employer that he had never been fired from a job (false), that his former supervisor would rate his job performance as excellent (false), and that his primary job duty at Rite Aid was to supervise store operations (true, but contrary to

spent their work time, whether by declaration, deposition, other testimony, or otherwise, something unheard of in managerial misclassification class action litigation.  Instead, plaintiff relied *solely* on evidence that Rite Aid, as is typical of any national retailer, has standardized policies and processes to train Store Managers and help them run their stores; that Rite Aid has always classified Store Managers as exempt; and that Store Managers can transfer from one store to another without re-training.  Indeed, plaintiff took the position on the motion that which duties individual Store Managers performed and the time they spent performing their duties were irrelevant to class certification and must be considered only when the merits of plaintiff's claim are tried.

### C.    Rite Aid's Opposition to Class Certification.

In opposition to plaintiff's motion, Rite Aid demonstrated that plaintiff's evidence did not support class treatment because *none* of his evidence was probative of whether a determination of exempt status could be determined on a classwide basis.  Rite Aid demonstrated that under California law, exempt status

---

his current claim that while at Ride Aid he performed mostly non-exempt job tasks).  Rite Aid also showed that plaintiff testified under oath that he had no recollection about a multitude of facts personal to himself, such as when he got married, where and when he went to school and what degrees he received, and any details (dates, job titles, duties) of his pre- and post-Rite Aid employment, yet amazingly he recalled with precision all details related to the exact percentages of time he spent on various managerial and non-managerial functions and how many hours he worked as a Store Manager.  The District Court inexplicably did not credit any of these points, which also showed that plaintiff would not be an adequate class representative.  *See* Order at 5-6.

rests on the *actual duties* performed by each Store Manager. In contrast to plaintiff, who offered *no evidence* regarding the actual duties performed by class members, Rite Aid presented two years of Store Manager self-audits (more than 1,000 responses), in which the managers were asked to report truthfully the duties they performed and the amount of time spent on each duty.[6] These self-audits were verified by 82 declarations by Store Managers attesting to the veracity of their self-audit responses and the absence of any coercion by Rite Aid in how to answer them. In addition, Rite Aid presented an observational study, conducted by the LECG consulting firm, that further corroborated the results of the self-audits. (Charts illustrating the results of the self-audits and the observational study, part of the record below, are attached to this petition as Appendix C.) Rite Aid also submitted 15 day-in-the-life and other detailed declarations from current and (testifying against interest) former Store Managers and from Rite Aid executives, setting forth the nature of managerial duties that Store Managers perform and the wide variation in the performance of their duties. This proof showed a significant

---

[6]    The self-audits (sample attached as Appendix B) instructed:

Using this self-audit form, analyze and report how you spend your work time. Please be candid. If you are spending a majority of your time on non-managerial duties, we want to understand the conditions in your store causing this and we will work with you to restore the proper balance of your work duties. Although completion of the self audit form is mandatory, no adverse action will be taken against you regardless of how you respond. Similarly, you will not receive any reward or benefit based on how you answer. All we want are your honest responses. [Underscoring in original.]

variance in the types of duties performed and the amount of time spent performing each duty.

Plaintiff did *nothing* to discredit any of this evidence—he presented no rebuttal or impeachment evidence.  Instead, he clung to his only argument that Rite Aid's standardized policies and processes warranted class certification.

### D.     The District Court's Order Granting Class Certification.

On August 31, 2006, the District Court granted class certification.  *See* Appendix A.  In analyzing whether common issues predominated as required by Fed. R. Civ. Proc. 23(b)(3) (*see* Order at 7-17), the District Court disregarded Rite Aid's massive evidence showing variations in the job duties performed by Store Managers, including the more than 1,000 self-audit results, the observational study, and nearly 100 declarations of Store Managers and Rite Aid executives.  *Id.* at 11-13.  Rather, the District Court relied upon plaintiff's argument that this variation is "irrelevant" because Rite Aid, like any large retail chain, has certain standardized policies and procedures maintained across its stores; historically has classified its Store Managers as exempt; and has specified a finite list of job duties that they perform.  *See id.* at 8-11.

## II.   THE DISTRICT COURT MADE A SERIES OF MANIFEST ERRORS THAT SHOULD BE CORRECTED ON APPEAL

Rule 23(f) review is appropriate where "the district court's class certification decision is manifestly erroneous….  We see no reason for a party to endure the

costs of litigation when a certification decision is erroneous and inevitably will be overturned."  *Chamberlan*, 402 F.3d at 959.  That is the case here on several fronts.

    **A.**    **The District Court Erroneously Gave No Weight to the More Than 1,000 Store Manager Self-Audits, the 82 Store Manager Declarations That Verified the Self-Audits, and the LECG Observational Study, All of Which Plaintiff Did Not Rebut.**

The District Court gave no weight to the 1,000+ self-audits, the 82 verifying Store Manager declarations (the existence of which the court did not even acknowledge), and the LECG observational study.  In *Sav-on Drug Stores v. Superior Court*, 34 Cal. 4th 319, 332 (2004), the California Supreme Court held that employers are supposed to assess exempt status on an individualized basis.  That is exactly what Rite Aid did here with the self-audits.  Indeed, since Store Managers are the highest ranking employee in their stores and there is no one supervising their daily activities, self-audits are very important tools in assessing compliance with the 50%-plus test.  They are also probative evidence of whether the 50%-plus test can be applied on a classwide, rather than individualized, basis.

The District Court, however, dismissed the self-audits and observational study as "litigation-driven products" because Rite Aid consulted with its counsel about the self-audits, and because the self-audits and the observational study were conducted in the midst of this litigation or the apprehension that this litigation would commence.  The District Court cited to *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 197 (N.D. Cal. 2004), but that case (itself pending before this Court on Rule

23(f) review) is inapposite here.  According to the *Dukes* opinion, attorney-designed questionnaires were used by an expert as a survey on which to base his opinion.  The questionnaires, said the court, were not a proper survey because they were biased on their face and revealed a litigation-oriented purpose.  *Id.* at 197.

Here, by contrast, the self-audits made no reference of any anticipated or pending litigation.  They expressly admonished the Store Managers to tell the truth, and disclaimed that there would be any reward or punishment based on the responses.  (*See* note 6, *supra*.)  Furthermore, the self-audits (and, for that matter, the LECG observational study) were not presented as surveys or in support of expert testimony.  Rather, they were used as direct evidence of the tremendous variation in how the Store Managers who responded or were observed spent their time, which negates the assertion that common issues predominate here.  Neither *Dukes* nor any of the cases it cited[7] holds that under those circumstances, such evidence should be disregarded because of consultations with counsel.

The District Court also mistakenly found that the self-audits suggested the "desired" outcome because they directed if the Store Manager reported spending more than 50% of his or her time on non-managerial tasks, the manager needed to

---

[7]     *See Pittsburgh Press Club v. United States*, 579 F.2d 751, 756-57 (3d Cir. 1978) (rejecting survey because of counsel's involvement); *Yapp v. Union Pacific Railroad Co.*, 302 F. Supp. 2d 1030 (E.D. Mo. 2004) (same); *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1067-68 (C.D. Cal. 2002) (same); *Delgado v. McTighe*, 91 F.R.D. 76, 80-81 (E.D. Pa. 1981) (same).

complete additional sections explaining (1) why this occurred, and (2) how it can be corrected to restore the proper balance.  According to the District Court, this "sends a clear signal to the employee regarding the employer's desired audit result."  Order at 13 n.5.  But the self-audit made clear that all Rite Aid wanted were honest answers, and assured the Store Managers there would be no reward or punishment based on their responses.  (*See* note 6, *supra*.)  Significantly, plaintiff did not offer even a *single* declaration recanting any self-audit.

Part of the test for exemption from overtime is whether the employer communicated to the employee its reasonable expectations that the employee would be spending more than half of his or her time on exempt job duties.  *See Ramirez*, 20 Cal. 4th at 802.  The self-audit was not the first time that Rite Aid had communicated its expectations to Store Managers about how they should spend their time.  Once Rite Aid receives information that a Store Manager is not meeting the 50%-plus test, it must help the Store Manager restore the proper work balance or else, under the law, reclassify the manager as non-exempt.  Rite Aid's appropriate notice to the managers that the self-audit would be used for that corrective purpose reasonably cannot be attacked as prompting biased responses.

Moreover, the District Court's conclusion that the self-audits directed Store Managers how to respond cannot be squared with the tremendous variation in responses, ranging from 27% to nearly 100% managerial, with about 15% of the

mangers reporting less than 50% managerial and virtually no two responses the same.  The court disregarded this proof.  In the absence of any evidence to support the court's supposition of bias, that was manifest error.

### B.    The District Court Erred in Not Recognizing the Substantial Variation Shown by the Self-Audits and the Observational Study.

The District Court also erred in finding that even if it considered the self-audits, they merely showed that the Store Managers did not spend "the exact same amount of time on each of the 16 tasks that Rite Aid chose to identify in its audit," and did not pertain to whether Store Managers spend more than 50% of their time on managerial duties.  Order at 13.[8]  But the substantial variation among Store Managers in time they spent on each duty proves that the 50%-plus test cannot be applied on a classwide basis.  By definition, to determine whether a particular Store Manager was properly classified as exempt, one needs to know how the Store Manager spent his or her time on each particular duty; determine whether that duty was exempt or non-exempt as performed by that manager; and then calculate whether the 50%-plus standard was met for that manager.  That is why a class cannot fairly be certified here; the core issue of whether a Store Manager is spending more than 50% of his or her time on exempt job duties cannot be decided on a class basis, but instead depends on a series of highly individualized questions.

---

[8]    The District Court (Order at 13) also misread a chart from the LECG observational study as showing substantial similarity in the performance of job duties, which is not what the chart or the study overall showed.  *See* Appendix B.

C.   **The District Court Erroneously Relied on Evidence of Rite Aid's Standardized Policies and Processes, Its Historical Classification of Store Managers as Exempt, and a Misreading of Rite Aid Executive Testimony to Find a Predominance of Common Issues.**

The District Court treated as independent bases for certification the fact that Rite Aid has standardized policies and processes for the operation of its stores and that historically it has classified its Store Managers as exempt.  The courts have long rejected the notion that standardized policies and processes vitiates exempt status.  *See, e.g., Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982); *Murray v. Stuckey's Inc.*, 939 F.2d 614, 619 (8th Cir. 1991); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982).

As for the historical classification of Store Managers as exempt, that also proves nothing, since the evidence also showed that Rite Aid has always expected its Store Managers to spend more than 50% of their time on managerial duties. Even if that classification has been overbroad, that shows only that some Store Managers should have been classified as non-exempt, not that all of them should have been treated as non-exempt.  Uniform classification does not, by itself, support class certification when individual determinations still must be made. *See Dunbar*, 141 Cal. App. 4th at 1427-28.

Finally, the District Court, misled by plaintiff's distortion of the record, unfortunately quoted the testimony of Rite Aid executives out of context, which made it appear that they confirmed that all Store Managers perform their jobs

uniformly.  That is *not* what the executives said.  Rather, the executives testified that while there is a finite list of job duties that Store Managers perform, the amount of time spent on those duties varies significantly from Store Manager to Store Manager based on several factors, including store size, sales volume, geographic location, size and competency of the workforce, *etc*.; and that managers used their independent judgment and discretion in directing Rite Aid policies and processes.[9]  That is *precisely* the reason class certification is *not* appropriate here.

> **D.    The District Court's Order Did Not Demonstrate the Superiority of the Class Action Device Because It Failed to Adopt a Trial Plan and None Was Proposed by Plaintiff.**

Finally, the District Court failed to specify a trial plan for the action.  Indeed, plaintiff failed to propose one, offering instead a rumination on various methodologies without specifying which would make the trial manageable and serve due process.  Plaintiff thus failed to meet his burden of proving how a class action would be the superior means of adjudicating the controversy.  By granting class certification despite this failure of proof, the District Court clearly erred.  *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (trial court's failure to show in its certification order how class action could be tried

---

[9]    For example, plaintiff quoted Rite Aid executive James Toney that items such as a store's square footage, sales volume and other factors would not have any impact on the kinds of duties performed by Store Managers.  But Mr. Toney went on to testify that the amount of time spent on those duties does change based on factors such as store size, sales volume, product mix and types of customers serviced.

reflected its failure to establish superiority of class-action vehicle);[10] *Dunbar*, 141 Cal. App. 4th at 1432 ("the party seeking class certification must explain how the procedure will effectively manage the issues in question").

The District Court's numerous errors warrant this Court's Rule 23(f) review.

## III. THIS COURT ALSO SHOULD PROVIDE GUIDANCE ON THE UNSETTLED AND FUNDAMENTAL ISSUE OF WHAT PROOF IS NECESSARY TO OBTAIN CLASS CERTIFICATION IN MANAGERIAL MISCLASSIFICATION CASES, ABOUT WHICH THE DISTRICT COURTS ARE IN CONFLICT

Rule 23(f) review also is appropriate if "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally…." *Chamberlan*, 402 F.3d at 959; *see also Blair v. Equifax Check Serv., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) (since class actions rarely reach appellate courts for review, fundamental aspects of Rule 23 remain "poorly developed").  This is precisely such a case.

Rite Aid's petition gives this Court the opportunity to articulate sorely-needed standards for the district courts to follow in deciding whether to certify a

---

[10]    To be sure, in *Chamberlan*, 402 F.3d at 961 n.4, this Court said that a district court's failure to adopt a trial plan was not a *per se* abuse of discretion.  But in *Chamberlan*, the plaintiffs did propose a trial plan—something plaintiff here did not do.  The Court in *Chamberlan* also stated that it was significant that *Valentino* was a pre-Rule 23(f) decision, but it is unclear why that is so since nothing in Rule 23(f) indicated that it changed the substantive standards for review of a class certification decision and, as a reform measure intended to put the breaks on over-certification of classes by the district courts, Rule 23(f) can hardly be viewed as having lessened the plaintiff's burden for winning class certification.

class in a wage-and-hour managerial misclassification case where the issue is how managers spend their time.

In *Sepulveda v. Wal-Mart Stores, Inc.*, 2006 WL 1540444 (C.D. Cal. 2006), the Central District was confronted with evidence very similar to the proof here. According to the court's opinion, Wal-Mart is a highly regimented company where managers go through a uniform 17-week training program, upper-management routinely tour and audit the stores, and everything from products and prices to store temperature and music are mandated by the home office. In response, like Rite Aid here, Wal-Mart put on a mass of evidence that notwithstanding standardized policies and processes, there was a tremendous variation among the managers at issue based on a wide variety of factors such as store size, sales volume, geographic location and workforce composition. The Central District, considering all of this evidence, ruled "the individual questions predominate over common issues. While common legal and factual questions do exist, there are relatively few that would actually require resolution. By far the bulk of the evidence would pertain to individualized questions, including the work performed by each individual [assistant manager]." *Id.* at *21.

California state courts hearing managerial misclassification cases brought against large retailers like Rite Aid also have rejected requests for class certification. Presented with arguments largely identical to those presented here

(and in *Wal-Mart*), in both *Dunbar* and *Home Depot*,[11] the trial judges found that the plaintiffs failed to meet the requirements for a class action because they were unable to demonstrate a predominance of common issues due to the significant evidence of variation in the work performed by the putative class members. These decisions are consistent with *Sav-on*, in which the California Supreme Court held that while the 50%-plus test does not necessarily preclude class certification, substantial evidence of variation in how class members perform their duties can support denial of certification. *Sav-on*, 34 Cal. 4th at 336-37. For that very reason, the leading cases post-*Sav-on*, including *Dunbar* (the only published California appellate decision since *Sav-on*), *Home Depot*, and, of course, *Sepulveda*—the case that poses the intra-circuit split that should be resolved by this Court—have denied certification in managerial misclassification cases. The District Court's certification order here cannot be reconciled with *Sepulveda*, *Dunbar*, and *Home Depot*. Indeed, it did not even try to distinguish those cases.

This Court is undoubtedly aware of the explosion of wage-and-hour class action litigation in California and other states that make up the Ninth Circuit. With the enactment of the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 9, the district courts will see more managerial misclassification class actions, whether

---

[11]     *See Dunbar v. Albertson's*, Alameda Superior No. RG-04-146326 (June 28, 2005), recently affirmed at 141 Cal. App. 4th 1422 (2006); *In re Home Depot Overtime Cases*, Riverside Superior No. JCCP4229 (Feb. 2, 2006).

under state law or the Fair Labor Standards Act. Given the decisions here and in *Sepulveda*, *Dunbar*, and *Home Depot*, there is a crucial need for this Court's guidance on whether a class should be certified in a managerial misclassification case when a defendant presents substantial evidence of variability among the putative class members in what duties they performed and how they spent their time on those duties, including what evidence should be given weight in deciding class certification. Rule 23(f) review here would correct the existing intra-circuit split, enunciate the appropriate standards for future cases, and avoid possible deprivation of the constitutional rights of both class members and defendants.

The need for appellate guidance in this areas is particularly acute here. The U.S. Supreme Court has recognized that class certifications often escape appellate review because of the immense pressure they place on defendants to settle rather than risking enormous adverse verdicts, regardless of the merits on liability, in effect presenting a "death-knell" situation for a defendant. *Coopers & Lybrand*, 437 U.S. at 476; *see also Chamberlan*, 402 F.3d at 959. It is for this very reason that Congress adopted Rule 23(f), to ensure that the realities of class action litigation do not shield from appellate review essential legal principles that should guide how class actions are handled in the district courts.

Dated: September 14, 2006.     PAUL, HASTINGS, JANOFSKY &
                                WALKER LLP,
                                By: _____
                                    Attorneys for Defendant Rite Aid Corp.