IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PRAG TIERNO, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

RITE AID CORPORATION,

    Defendant.

No. C 05-02520 TEH

**ORDER DENYING OBJECTIONS TO MAGISTRATE JUDGE LARSON'S ORDERS ON MOTIONS TO COMPEL**

This matter comes before the Court on Defendant Rite Aid Corporation's objections to Magistrate Judge Larson's May 30, 2008 Order granting in part and denying in part various discovery motions. Having carefully considered the parties' written arguments and the record,[1] the objections are DENIED. The Court is not persuaded that the May 30, 2008 rulings are either clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *United States v. Saunders*, 641 F.2d 659, 663-64, n.1 (9th Cir. 1980).

**FACTUAL AND PROCEDURAL BACKGROUND**

This is a class action wage-and-hour employment case alleging that employees were misclassified as managers and therefore unlawfully denied break time, overtime pay, and other benefits due under various laws for non-exempt employees.

After the Court certified the class on August 31, 2006, several discovery disputes arose.

---

[1] The Court has received and reviewed Rite Aid's proposed Reply brief, submitted on July 7, 2008. The arguments contained therein do not change the Court's analysis. Accordingly, the motion for leave to file the Reply is DENIED.

**Class Member Declarations**

Rite Aid sought discovery of any declaration or written statement signed or adopted by any class member. Plaintiffs' counsel refused to disclose the nearly 200 declarations of store manager class members in their possession. They objected the declarations were protected by the attorney-client privilege because class members who sought them out to find out about the status of the case were seeking legal advice. They also objected the declarations were protected by the work product doctrine, because disclosing the declarations (or even the names of the declarants) would reveal counsel's mental processes and strategy by showing whose testimony Plaintiffs planned to rely on and what facts counsel found critical.

Rite Aid moved to compel. Rite Aid argued that any objections were waived because Plaintiffs did not produce an adequate privilege log. It argued the declarations were not protected by the attorney-client privilege because there was no attorney-client relationship between store managers and counsel before the class was certified. Moreover, Rite Aid argued, Plaintiffs had failed to describe how or why the declarations actually revealed any attorney thought processes, and had made no showing that Plaintiffs' counsel had any role in drafting them. Finally, Rite Aid argued that any work product privilege was not absolute, and the Court should order disclosure because Rite Aid needs class member statements about the work they did, their hours, their breaks, and their wage statements to mount a defense.

Judge Larson denied the motion. He found that the letter from Plaintiffs' counsel stating that Plaintiffs were withholding certain categories of documents (including declarations from Rite-Aid employees) constituted a privilege log, albeit an incomplete one, so that the privileges were not waived. He ordered Plaintiffs to provide an adequate privilege log which set provided the information required in *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989) and *In re Grand Jury*, 974 F.2d 1068 (9th Cir. 1992), such as the attorney involved, the general nature of the document (letter, declaration), date, and so forth, but allowed Plaintiffs to identify the class members by number rather than

name to protect their identities. The motion to compel the declarations themselves was "denied without prejudice, pending Plaintiffs' designating witnesses or introducing statement in evidence." 5/30/08 Order at 6:12-13; *cf. id.* at 13:9-10 (apparently denying the motion with prejudice).

Plaintiffs have since produced a privilege log which lists class members by number and sets out the date of the document, the nature of the document, the attorney(s) involved, the privilege invoked, and the recipient. It claims work product protection as to each declaration, and attorney client privilege as to all but 21 of the declarations created before the class was certified and 20 created after the class was certified.

**Tierno Employment History**

At the class certification stage, Rite Aid argued that Tierno was not an appropriate representative because 1) he had been terminated for selling glucose meters at a discount to a reseller against the orders of his District Manager, and 2) was dishonest on his application to his subsequent employer, PetSmart (because he represented that he was a manager at Rite-Aid). The Court found the evidence before it insufficient to undermine Tierno's credibility and render him unfit to represent the class. 8/31/06 Order at 5-6.

Once merits discovery began, Rite Aid sought disclosure of documents relating to Tierno's employment history before, during, and after he worked at Rite Aid – from employment applications, to wages, to insurance-related documents. Rite Aid argued such documents were relevant to show whether Tierno told his subsequent employers he worked as a supervisor, whether he was misperforming his duties or engaged in fraud while he was employed, or whether he is a suitable named plaintiff. Tierno objected that such invasive information was private. Judge Larson observed that although Rite Aid was seeking to impeach Tierno's credibility, this Court had already concluded that "Rite Aid's assertions about Tierno's pre- and post-employment behavior did not affect his suitability to be a class representative."

Rite-Aid now seeks the same information. Judge Henderson did leave it somewhat open, however, saying that "if serious concerns develop as this case moves forward, the Court can revisit this issue."

3

> If Judge Henderson has concerns about Tierno's suitability to represent the class, he may choose to revisit the issue, but he hasn't yet. This part of Defendant's motion is denied.

5/30/08 Order at 8:13-21.

**Class Member Depositions**

Rite Aid asked to depose 100 store managers – about 8% of the class – for four hours each – that is, 50 full eight-hour days of deposition. Plaintiffs refused.

Rite Aid moved the Court for leave to depose the class members, arguing it has no other way to find information crucial to liability, such as what tasks managers really performed, whether they spent most of their time on non-exempt tasks, and what expectations Rite Aid communicated to store managers about how they should spend their time. *Cf. Ramirez v. Yosemite Water, Inc.*, 20 Cal.4th 785, 806 (1999)(setting out issues in wage and hour claims). Rite Aid claims it has no other access to the information, since the store managers are the highest-ranking employees in each store and they are prohibited from contacting the managers now that the class is certified.

Plaintiffs countered that Rite Aid performed more than adequate investigation in 2005 and 2006, before the class was certified, by asking store managers to fill out "Self-Audit" forms describing their activities. Morever, Plaintiffs argued the request to depose plaintiffs was premature given that the parties have not yet determined a trial plan.

Judge Larson denied the request on the ground that Rite Aid has had the chance to question its own employees with the Self-Audits. In its August 31, 2006 Order granting class certification, this Court discounted the Self-Audit questionnaires, observing that they were clearly a "litigation-driven product," phrased in a way that gave a "clear signal" to the store managers about what results Rite Aid sought. 8/31/06 Order at 11-13. Relying on that observation, Judge Larson concluded that "any unreliability of the Self-Audits maybe laid firmly at Rite-Aid's door," 5/30/08 Order at 13:4-5, so Rite Aid

4

1 cannot use the need to "test the veracity of class members' responses" to justify absent
2 class member depositions. *Id.* at 12-13.
3  Rite Aid now raises five Objections to Magistrate Judge Larson's Order.

## STANDARD OF REVIEW

This Court should defer to a magistrate judge's determination on nondispositive matters unless it is clearly erroneous or contrary to law. Fed. R. Civ. Pro. 72(a); 28 U.S.C. § 636(b)(1)(A) . "[A] magistrate's order is 'clearly erroneous' if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed, and the order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Laurel Village Bakery, LLC v. Global Payments Direct, Inc.,* 2007 WL 4410396, 2 (N.D.Cal. December 14, 2007)(citations omitted).

## DISCUSSION

### Objection 1: Plaintiffs Should Be Required To Produce A Privilege Log That Lists The Names Of The Declarants

A privilege log must include information sufficient to "enable other parties to assess" the claim of privilege, without revealing privileged or protected information. Fed. R. Civ. Pro. 26(b)(5)(A). Ordinarily, this entails disclosing the nature of the document, the identity of its author, and other identifying information. *See* Schwarzer et al., *Federal Civil Procedure Before Trial* § 11.1919*, citing United States v. Construction Products Research Inc.*, 73 F.3d 464, 473 (2nd Cir. 1996).

Rite Aid objects that Judge Larson's Order allowing Plaintiffs to identify the class member declarants by number rather than name was clearly erroneous because the names are not privileged, and Rite Aid cannot evaluate the claim of privilege without the declarants' names.

The Objection is denied. First, Magistrate Judge Larson did not clearly err by finding that the names are either privileged or protected. Plaintiffs claim work-product protection as to each declaration. Judge Larson relied on *In re Ashworth, Inc. Securities Litigation,* 213 F.R.D. 385, 387-389 (S.D.Cal. 2002) to hold that Plaintiffs would not be required to identify class members by name. In *Ashworth,* the court held that the names of witnesses who provided the information supporting the complaint were protected as attorney work product, because revealing the names "would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with [p]laintiff's counsel's legal theories and conclusions as outlined in the complaint."[2] *See also Ferruza v. MTI Technology,* 2002 WL 32344347, 3 (C.D.Cal. June 13, 2002)(identity of witnesses interviewed by counsel protected).    While the identity of employees cooperating after the complaint was filed might not reveal as much as the identity of witnesses whose statements underlie a complaint, and while some courts have gone the other way – *see, e.g., Miller v. Ventro Corp.,* 2004 WL 868202, 2 (N.D.Cal. April 21, 2004)(need for information and hardship outweighs any minimal work product protection of names of confidential witnesses in securities case), Judge Larson's reliance on *Ashworth* was not clearly erroneous.

Second, Rite Aid has not persuasively explained why it needs the names at all to evaluate the claims of privilege. Although Rite Aid claims it needs the names of the declarants "to verify ...that they are in fact members of the class," Objections at 4:19-20, or determine whether Plaintiffs properly asserted the privilege, *id.* at 5:11-12, the Request for Production at issue specifically sought declarations and statements only of "any member of the class." If the declarants are not class members, then their declarations are not responsive to the Request. If they are, then the Magistrate Judge properly found their names are protected work product.

---

[2] Moreover, forcing disclosure of the names of employees who have cooperated with Plaintiffs' counsel could have a chilling effect on class members' communications with counsel. *Id.* at 388.

6

**Objection 2: Plaintiffs Should be Ordered To Produce Those Declarations And Witness Statements Not Protected By Attorney-Client Privilege**

As noted above, Plaintiffs claim attorney-client privilege for only 153 of the 194 declarations. They do not claim attorney-client privilege for 21 of the declarations created before the class was certified, or for 20 of the declarations created after the class was certified. Rite Aid objects that the remaining 41 declarations should be disclosed because they are not work product, and even if they are, the Court should order disclosure because Rite Aid has substantial need for them.

Work product protection is not always absolute. As Judge Chen recently summarized:

> The work product privilege protects information "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed.R.Civ.P. 26(b)(3)(A). ... It is a qualified privilege that may be overcome if the party seeking disclosure of the privileged materials "shows that it has substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(ii). If a court orders disclosure of work product, however, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed.R.Civ.P. 26(b)(3)(B). Thus, "opinion work product," as opposed to "fact work product," is typically considered core work product. *Cf. In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (stating that "opinion work product enjoys 'substantially greater protection than ordinary work product'"; adding that opinion work product "'enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances'"); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 664 (3d Cir. 2003) (stating that "opinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances").

*Moreno v. Autozone, Inc.*, 2008 WL 906510, 1 (N.D.Cal. April 1, 2008). Thus, while verbatim witness statements are generally considered ordinary work product, *see In re Convergent Technologies Second Half 1984 Securities Litigation,* 122 F.R.D. 555, 559 (N.D.Cal. 1988), an attorney's notes and memoranda of statements are protected as opinion work product because they reveal the attorney's mental processes and show what facts the attorney deems legally significant. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). A declaration drafted by an attorney is "clearly work product right up until the moment it [is] filed," *Intel Corp. v. VIA Technologies, Inc.,*

7

204 F.R.D. 450, 452 (N.D.Cal. 2001), and could easily reveal the same thought processes as a summary or memorandum of a statement.

Moreover, Rite Aid has not shown rare or extraordinary circumstances that could justify ordering disclosure of the declarations. Rite Aid had exclusive access to its store managers for well over a year before the class was certified. There is no looming discovery cutoff, no witnesses have been identified, and Plaintiffs have not relied on the declarations in any way. Rite Aid relies on several cases to argue that has substantial need for the information, but each is distinguishable. *Morisky v. Public Service Elec. and Gas Co.,* 191 F.R.D. 419, 425 (D.N.J. 2000) concerned only class member answers to questionnaires (since the questions had already been disclosed) which were completed before the suit was filed. *In re Harmonic, Inc. v. Sec. Litig*, 245 F.R.D. 424, 429 (N.D. Cal. 2007) concerned only the identities of confidential witnesses, not their declarations.

Judge Larson's Order denying the motion to compel production of the declarations without prejudice, pending "Plaintiff's designating witnesses or introducing statements into evidence," was not clear error.

**Objection 3: Plaintiff Should Be Ordered To Produce Information Regarding His Employment History**

Federal courts have acknowledged a right to privacy in employment files. *See Kakagawa v. Regents of University of California*, 2008 WL 1808902, 2 (N.D. Cal. April 22, 2008). Moreover, federal courts may apply state privilege laws, such as California's constitutional right to privacy, where they do not conflict with federal law. *See Soto v. City of Concord*, 162 F.R.D. 603, 609 n.2 (N.D. Cal. 1995). Under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in his or her employment files. *Kakagawa*, 2008 WL 1808902 at *2, citing Ragge v. MCA/Universal*, 165 F.R.D. 601, 604 (C.D.Cal. 1995); *Bible v. Rio Properties, Inc.,* 246 F.R.D. 614, 620 (C.D.Cal. 2007), *quoting Davis v. Leal*, 43 F.Supp.2d 1102, 1110 (E.D.Cal.1999)(California right to privacy "is subject to balancing the needs of the litigation with the sensitivity of the information/records sought")..

8

The employment records Rite Aid seeks are of marginal relevance, if any, to the central issues in the case – whether Rite Aid store managers are exempt or non-exempt employees. The requests are also deeply invasive, seeking inherently personal information about Mr. Tierno's salary, insurance, and disciplinary records. The Court has already found that Mr. Tierno is a suitable representative. Rite Aid argues that by noting that it would consider revisiting his suitability if "serious concerns" develop, the Court "clearly was permitting Rite Aid to adduce additional information if it can." The Court was not inviting a fishing expedition for impeachment material; it merely expressed a willingness to revisit Mr. Tierno's suitability if new facts which cast genuine doubt on his suitability arise during litigation. At this point, the Court has no reason to renew its inquiry into Mr. Tierno's adequacy. Magistrate Judge Larson did not clearly err by finding that Mr. Tierno's privacy interests outweigh Rite Aid's need for discovery of his employment records.

**Objection 4: Rite Aid Should Be Permitted To Depose A Sampling of 100 Class Members**

The law on discovery directed to absent class members is flexible. Discovery from absent class members is "neither prohibited nor sanctioned explicitly" by the Federal Rules. *Krueger v. New York Telephone Co.*, 163 F.R.D. 446, 450 (S.D. N.Y. 1995). Absent class members are not ordinarily required to submit to discovery; requiring them to respond would undercut the purposes of class certification and effectively create an "opt in" scheme for absent plaintiffs. *See McPhail v. First Command Financial Planning, Inc.,* __ F.R.D. __, 2008 WL 2167198, 2 (S.D.Cal. April 3, 2008). However, such discovery has been permitted in certain circumstances, where the information sought is relevant, not readily obtainable from the representative parties or other sources, and the request is not unduly burdensome and made in good faith. *See, e.g., Cornn v. United Parcel Service, Inc.,* 2006 WL 2642540, 2 (N.D.Cal. September 14, 2006)(listing factors); *McPhail*, *supra,* at 3.

Rite Aid contends that all these factors weigh in favor of allowing the depositions. The Store Managers' testimony is indisputably relevant. In wage and hour class actions, "defendant is entitled to defend against plaintiffs' complaint by attempting to demonstrate wide variations in the types of stores and, consequently, in the types of activities and amounts of time per workweek the [managers] in those stores spent on different types of activities." *Sav-on Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 330 (2004). In *Sav-On* itself, for example, defendants submitted the declarations of 51 managers about what tasks they performed.

But whether Rite Aid can or could have obtained the information from other sources is not as clear. Rite Aid argues that Plaintiff Prag Tierno has information only about his own experience and his own store, and that interrogatories are no substitute for the immediacy of depositions. Rite Aid also argues it needs depositions to show that its Self-Audit questionnaires were fairly designed and administered and their results reliable (not, as Judge Larson suggested, because it believes the questionnaires are unreliable). *See* 5/30/08 Order at 12:20-13:7. But Rite Aid had unfettered access to its own Store Managers for nearly a year and a half while the class was being certified. It could have gathered its own declarations during that time, or conducted individualized interviews. Instead, it chose to have its Store Managers fill out questionnaires that telegraphed the responses Rite Aid hoped to get. Moreover, the 400 hours of deposition Rite Aid requests are clearly burdensome.

Judge Larson did not err by denying Rite Aid's request at this juncture. This Court interprets Magistrate Judge Larson's Order as denying the request without prejudice to requests for discovery from those class members whose testimony is offered in support of Plaintiffs' case at some point after a discovery plan is complete. Rite Aid will therefore not face the same situation as the defendant in *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 345 (4th Cir. 1998), on which Rite Aid relies heavily. There, the court found it was error to prohibit depositions of absent class members, and to force the defendant "to defend against a fictional composite without the

10

benefit of deposing or cross-examining the disparate individuals" behind the "perfect plaintiff" created at trial by piecing together the strongest facts from different members of the plaintiff class.  Here, some appropriate form of discovery will be allowed at some point as to testifying class members;[3] even Plaintiffs argued before Judge Larson that "Defendant's request for leave to depose 100 absent class members is premature," and any request for leave to depose absent class members should be considered only after a discovery plan is in place, Docket No. 150, Opposition to Motion to Compel, at 9:6-7, not that Rite Aid should be denied all discovery for the remainder of the case from all class members except Prag Tierno.

The Magistrate Judge's Order denying leave to depose absent class members was well within the Court's authority to manage complex litigation.  This Court approves of that Order, clarifying that it is without prejudice to more limited requests for discovery relating to class members whose testimony Plaintiffs plan to offer, made in the context of an agreed-upon discovery plan.

**Objection No. 5: Due Process Requires that Rite Aid Have An Opportunity to Depose A Reasonable Number of Class Members**

Finally, Rite Aid offers a variation on its theme by objecting that it should be permitted to depose class members who have given declarations to Plaintiffs' counsel. *See*, *e.g., Moreno v. Autozone, Inc.* 2007 WL 2288165, 1 (N.D.Cal. August 3, 2007)(allowing depositions of class members who "injected themselves" into the litigation with their declarations offered in support of class certification); *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority,* 2006 WL 2588710, 1-5 (D.D.C. 2006)(allowing depositions of 20 class

---

[3] *Broussard* is further distinguishable because the holding was based on the court's earlier holding that class certification was completely improper; the class certified was no more than "a hodgepodge of factually as well as legally different plaintiffs," without common or typical facts or claims.  *Id.* at 343.  The defendant's inability to depose class members in that case was in part what allowed plaintiffs to create the idealized composite plaintiff from individuals with materially different facts and claims, and so to enlarge the class's claims against the defendant. *Id.* at 345.  Here, in contrast, the Court has found that class treatment is appropriate.

11

members who offered declarations in support of discovery motion); *Cornn v. United Parcel Service, Inc.,* 2006 WL 2642540, 4 (denying leave to depose class members but noting that "his ruling does not preclude UPS from asserting that it is entitled to depose absent class members recently identified by Plaintiffs as potential witnesses").

As noted above, the Order is without prejudice to requests for discovery from witnesses at a later stage of the litigation. Moreover, an Order allowing depositions of anyone who has cooperated with Plaintiffs' counsel would have an even more chilling effect on Plaintiffs' participation in the suit than allowing discovery from a random sample. It would run the risk of making Plaintiffs feel that they will be harassed and scrutinized if they cooperate with class counsel.

**CONCLUSION**

For the reasons set forth above, the Court overrules Defendant's objections to Magistrate Judge Larson's Order of May 30, 2008.

**IT IS SO ORDERED.**

Dated: July 8, 2008

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE