IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PRAG TIERNO, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RITE AID CORPORATION,<br><br>　　　　Defendant. | No. C 05-02520 TEH<br><br>**ORDER DENYING IN PART OBJECTIONS TO MAGISTRATE JUDGE LARSON'S JULY 14, 2008 ORDER, AND SETTING BRIEFING SCHEDULE AND HEARING** |

　　This is a class action wage-and-hour employment case alleging that employees were misclassified as managers and therefore unlawfully denied break time, overtime pay, and other benefits due under various laws for non-exempt employees. This matter comes before the Court on Defendant Rite Aid Corporation's Objections to Magistrate Judge Larson's July 14, 2008 Order requiring Rite Aid to identify current and former store managers and pay for copying certain documents it is required to produce.

　　Having considered Rite Aid's Objections and supporting documents and other relevant documents in the record,[1] the Court finds that responsive briefing is unnecessary as to Rite Aid's Objections Nos. 1 and 2. Those Objections, which challenge the portion of the July 14, 2008 Order requiring Rite Aid to disclose the names and contact information of opt out class members and all individuals who were store managers during the class period outside California are DENIED. Magistrate Judge Larson adequately weighed the privacy interests of those individuals against the need for discovery in his May 30, 2008 Order, and his determination that Plaintiff is entitled to

---

[1] These include the briefs on Plaintiff's Motion to Compel (Docket Nos. 138, 156, and 157).

disclosure is neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A); *United States v. Saunders*, 641 F.2d 659, 663-64, n.1 (9th Cir. 1980).

However, the Court finds that responsive briefing on Rite Aid's Objection No. 3, challenging the portion of the July 14, 2008 Order that imposes copying costs on Rite Aid, will be useful, and a briefing and hearing schedule is set out at the conclusion of the Order. Because the parties will then have had a full opportunity to argue the issue, Rite Aid's Objection No. 4 – that the dispute should have been resolved by noticed motion – is DENIED as moot.

**STANDARD OF REVIEW**

This Court should defer to a magistrate judge's determination on nondispositive matters unless it is clearly erroneous or contrary to law. Fed. R. Civ. Pro. 72(a); 28 U.S.C. § 636(b)(1)(A) . "[A] magistrate's order is 'clearly erroneous' if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed, and the order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Laurel Village Bakery, LLC v. Global Payments Direct, Inc.,* 2007 WL 4410396, 2 (N.D.Cal. December 14, 2007)(citations omitted).

**DISCUSSION**

**I.     Production of Names and Contact Information of Opt-Outs and Out-of-State Store Managers**

**A.     The Nature of the Dispute and Magistrate Judge Larson's Rulings**

Plaintiffs' Interrogatories Nos. 1 and 22 sought the name and contact information for any individual who was a store manager at Rite Aid nationwide at any time during the class period – which amounted, after class certification, to a request for identifying information for store managers who have opted out and store managers outside California. Rite Aid refused to produce on privacy grounds. Plaintiff moved to compel. The motion was fully briefed. (Docket Nos. 138, 156, and 157). Rite Aid opposed the

2

motion on the ground that the privacy interests of the store managers outweigh Plaintiff's need for their contact information. Defendant Rite Aid Corporation's Opposition to Plaintiff's Motion to Compel Further Responses to Plaintiff's Special Interrogatories, filed May 1, 2008, at 7-11.

Judge Larson ruled that:

> FRCP 26(a)(1)(A) requires Rite-Aid to produce contact information for witnesses and only Rite-Aid has this information. This is critical to Plaintiff's case and Rite Aid shall produce it. There is a protective order in place, if necessary to protect individuals' privacy. However, the parties have indicated their intention to resolve the dispute on their own, so the Court takes this portion of the motion under submission, pending the outcome of their efforts.

May 30, 2008 Order at 9.

Negotiations broke down. Plaintiff wrote the Court a two-page letter about the disagreement rather than refiling the motion. Defendant wrote an 8-page response.

Magistrate Judge Larson ordered disclosure.[2] Although Rite Aid argued that it did not yet know whether it would use any opt-out or non-California store manager as a witness, and promised to make immediate disclosures if it decided to do so, Judge Larson held that Rule 26 requires disclosure of "not only designated witnesses, but also potential witnesses, anyone 'likely to have discoverable information.'" *Id.* at 2. He ordered that "Defendants shall immediately produce this information to Plaintiffs without limitation." *Id.*

### B.     Analysis

Rite Aid first objects that the July 14, 2008 Order was clearly erroneous because Rule 26(a)(1)(a) requires Rite Aid to identify only those persons it intends to use to support its defense, not anyone likely to have discoverable information.

It would be error for the court to order disclosure solely on the basis of Fed. R. Civ. Pro. 26(a)(1)(A). That Rule requires a party to provide, as part of initial

---

[2] He noted that Plaintiff had failed to comply with the meet and confer requirement, but resolved the issue anyway "in order to prevent further delay in Defendants' compliance with their discovery obligations." July 14, 2008 Order at 1.

3

1 disclosures, the name, address, and telephone number of any individual "likely to have
2 discoverable information ... *that the disclosing party may use to support its claims or*
3 *defenses*." (emphasis added). The earlier version of the Rule required disclosure of
4 person who might have knowledge "relevant to disputed facts alleged with particularity
5 in the pleadings." But the 2000 amendments to the Rule – which included the italicized
6 language above – narrowed the disclosure obligation to

> identification of witnesses and documents that the disclosing party may use to support its claims or defenses. "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if – in the language of Rule 26(a)(3) – "the need arises."
>
> A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use.

13 Fed. R. Civ. Pro. 26(a)(1) advisory committee's note (2000); *see also Gluck v. Ansett*
14 *Australia Ltd.,* 204 F.R.D. 217, 222 (D.D.C. 2001)(the "essential inquiry is whether the
15 disclosing party intends to use the witness").

16 But Magistrate Judge Larson's ruling was not based solely on Rule 26. His May
17 30, 2008 Order properly concluded that Plaintiff's interest in discovery outweighed any
18 privacy interests, and provides an alternate ground for the ruling.

19 To evaluate privacy objections under either federal or state law, the Court must
20 balance the party's need for the information against the individual's privacy right in his
21 or her employment files. *Kakagawa v. Regents of University of California*, 2008 WL
22 1808902, 2 (N.D. Cal. April 22, 2008)*, citing Ragge v. MCA/Universal*, 165 F.R.D. 601,
23 604 (C.D.Cal. 1995); *Bible v. Rio Properties, Inc.,* 246 F.R.D. 614, 620 (C.D.Cal.
24 2007), *quoting Davis v. Leal*, 43 F.Supp.2d 1102, 1110 (E.D.Cal.1999)(California right
25 to privacy "is subject to balancing the needs of the litigation with the sensitivity of the
26 information/records sought"). Both parties rely on *Pioneer Electronics, Inc. v. Superior*
27 *Court*, 40 Cal.4th 360, 370-73 (2007), which reviewed the framework the Court should
28 use to assess privacy claims: first, the claimant must have a "legally protected privacy

4

interest," such as an interest in precluding dissemination of sensitive information or in making intimate personal decisions without outside intrusion; second, the claimant must have a "reasonable expectation of privacy" founded on broadly based community norms; third, the invasion of privacy must be "serious"; and fourth, the privacy interest must outweigh the countervailing interests, such as discovery rights. *Id.* at 370-73, citing *Hill v National Collegiate Athletic Assn.* 7 Cal.4th 1, 35-40 (1994); *see also Puerto v. Superior Court,* 158 Cal.App.4th 1242 (2008).

Here, dissemination of that information to Plaintiffs' counsel is not a "serious" invasion of privacy. The fact that these individuals were employed as store managers at Rite Aid – a position that involves dealing with the public – is not confidential, sensitive, or embarrassing information. Although their contact information is private, as Judge Larson noted in his original June 30, 2008 Order, a protective Order is in place to ensure that information is not misused. *See Pioneer Electronics*, 40 Cal.4th at 371 (privacy intrusion is minimized where safeguards that shield information from disclosure are in place).

Plaintiffs have a significant interest in identifying witnesses, however. California store managers who opted out will have relevant information about the tasks they performed and Rite Aid's policies and practices in California. Proof that Rite Aid's policies and practices on what tasks store managers perform are uniform nationwide might bolster the argument that they are uniform throughout California. Judge Larson's conclusion that Plaintiff's interest in discovery outweighs any minimal privacy intrusion caused by disclosure was not clearly erroneous.

Rite Aid's second Objection, that California law requires an employer to obtain the consent of employees before releasing their private identifying information in discovery, has no merit. Rite Aid argues that "[d]isclosure of an individual's personal identifying information is only appropriate where the court 'impose[s] important limitations, requiring written notice of the proposed disclosure to all [individuals], giving them the opportunity to object to the release of their own personal identifying

5

information.'" Objections at 8, quoting *Pioneer Electric*, 40 Cal.4th at 373. This is an overreading of *Pioneer Electric*. That case held only that an order requiring disclosure of potential class members' contact information was *not* a serious invasion of privacy, because the contact information alone "involves no revelation of personal or business secrets, intimate activities .. and threatens no undue intrusion to one's personal life" and because the court had ordered notice. *Id. Pioneer Electric* did not impose a notice requirement. Moreover, notice would make no sense here, as witnesses cannot choose to "opt out" of civil discovery.[3] As one court pointed out, "[g]enerally, witnesses are not permitted to decline to participate in civil discovery, even when the information sought from them is personal or private." *Puerto*, 158 Cal.App.4th at 1256-57.

The Objections to the portion of the July 14, 2008 Order compelling responses to Plaintiff's interrogatories 1 and 22 are DENIED.

## II.  Costs of Disclosure

### A.  The Nature of the Dispute and Judge Larson's Ruling

During discovery, Rite Aid agreed to provide non-privileged documents in response to Plaintiff's Requests for Production Nos. 54, 56, 57, 58, 62, and 72, which sought documents about class members' employment and salary history, terminations, performance evaluations, discipline, certain communications, and, most importantly, personnel files. Plaintiff's March, 2008 Motion to Compel argued that despite its agreement to produce the documents, Rite Aid had produced none, and asked the Court to set a date certain for production. Plaintiff's Motion to Compel, filed March 26, 2008, at 5-6, 11-12. Rite Aid protested it would produce the documents on a rolling basis. Rite Aid's Opposition to Motion to Compel, filed May 1, 2008, at 12. Judge Larson found "that rolling production is not satisfactory and that Rite Aid shall provide Plaintiff with a date or dates for production of documents responsive to specific requests, or other

---

[3] Although the California Supreme Court affirmed the trial court's order in *Pioneer Electric* requiring a notice with the opportunity to object to disclosure of identifying information, *Pioneer Electric* involved precertification identification of potential class members.

6

arrangement as the parties may agree to, following their meet and confer." May 30, 2008 Order at 11.

Rite Aid demanded that Plaintiff either travel to its various district office locations throughout California and copy the documents, or pay the copying expenses, which it estimated at "$104,178.84." Letter from Carrie S. Lin, filed July 1, 2008, at 2. Plaintiff wrote Judge Larson seeking a "clarification" that the May 30, 2008 Order did not require Plaintiff to bear copying costs. Rite Aid responded that it had met its obligations under Rule 34(a)(1)(A) by allowing Plaintiff to inspect and copy the documents in the locations where they are normally kept.

After weighing the factors set out in *Zubulake v. UBS Warburg, L.L.C.*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003) used to determine whether the expense of production should be shifted to the requesting party, Magistrate Judge Larson required Rite Aid to produce the documents at its own expense. July 14, 2008 Order at 2-3.

### B. Analysis

Rite Aid's Third Objection is that Fed. R. Civ. Pro. 34 requires Plaintiff, not Rite Aid, to bear the costs of photocopying. Rule 34(a) states that "a party may serve on any other party a request ...[¶] (1) to produce and permit the requesting party ... to inspect, copy, test or sample ... [¶] (A) any designated documents ...." "[T]he presumption is that the responding party must bear the expense of complying with discovery requests, but [it] may invoke the district court's discretion under Rule 26(c) to grant orders protecting [it] from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

Rite Aid correctly argues that the seven-factor *Zubulake* test which Judge Larson applied is intended solely for *electronic* discovery, not for discovery of paper documents. The *Zubulake* opinion sought to refine a set of factors which had been set out in an earlier case, which had "become the gold standard for courts resolving electronic

7

discovery disputes." 217 F.R.D. at 320.  The seven-factor framework developed in *Zubulake* clearly applies solely to electronic discovery. *See, e.g., Semsroth v. City of Wichita*, 239 F.R.D. 630, 636 (D.Kan. 2006) (*Zubulake* is the leading case on "cost-shifting of electronic discovery"); *Quinby v. WestLB AG*, 245 F.R.D. 94, 101 (S.D.N.Y. 2006) (*Zubulake* sets forth "an analytical framework for determining whether it is appropriate to shift the costs of electronic discovery"); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 572 (N.D.Ill. 2004) (*Zubulake* is one of three tests "[i]n the electronic arena" to determine when shifting costs of production in response to "e-discovery" requests is appropriate); *OpenTV v. Liberate Technologies,* 219 F.R.D. 474, 476 (N.D.Cal. 2003)("[i]n the context of discovery of electronic documents" *Zubulake* standard applies).

The rule for paper documents, on the other hand, is that "[a] party producing documents will ordinarily not be put to the expense of making copies for the requesting party." 7 *Moore's Federal Practice* § 34.13 [5] at 34-92 (2008); Schwarzer et al, *Federal Civil Procedure Before Trial* § 11:1932, *citing Continental Ill. National Bank and Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 690 (D. Kan. 1991) and *Bills v. Kennecott Corp.* 108 F.R.D. 459, 462 (D. Utah 1985)("Ordinarily, the producing party bears the costs of reviewing and gathering documents while the requesting party pays for the costs of the copies only"); *Clever View Investments, Ltd. v. Oshatz,* 233 F.R.D. 393, 394 (S.D.N.Y. 2006)("[A] party need only make requested documents available for inspection and copying; it need not pay copying costs").

Magistrate Judge Larson clearly erred by analyzing the dispute under *Zubulake*. However, other grounds may exist for shifting the costs of copying to Rite Aid. Plaintiff did not brief the issue below, and while the Court is unaware of such grounds, Plaintiff shall be granted the opportunity to argue Rite Aid should pay for copying or otherwise bear or share the cost. As set out above, the opportunity to brief the issue and be heard

8

makes Rite Aid's fourth Objection – that the request should have been brought by noticed motion – moot.[4]

**CONCLUSION**

For the reasons set forth above, Rite Aid's Objections Nos. 1, 2, and 4 to Magistrate Judge Larson's Order of July 14, 2008 are DENIED.  Plaintiff is ordered to file a brief responding to Objection No. 3 no later than Friday, August 8, 2008.  Rite Aid may file a Reply no later than Thursday, August 14, 2008.  **The Court will hear argument on Rite Aid's Objection No. 3 at 1:30 p.m. on Monday, August 18, 2008.**

**IT IS SO ORDERED.**

Dated:   July 31, 2008

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE

---

[4] The Parties should note, however, that Judge Larson's Standing Order, ¶ 8, sets out the proper procedure for bringing such disputes before him.

9