# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made by and between plaintiff Prag Tierno ("Plaintiff"), individually and on behalf of the Class, and defendant Rite Aid Corporation ("Rite Aid").  Plaintiff and Rite Aid collectively are referred to in this Agreement as the "Parties."

## I.      DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

A.      "Action" means the civil action entitled "*Tierno v. Rite Aid Corp.*," number C-05-02520-TEH, commenced on May 9, 2005, by Plaintiff against Rite Aid in the Superior Court of California, Alameda County, and removed to the U.S. District Court, Northern District of California.

B.      "CAFA Notice" means the notice of the Settlement that Rite Aid will give pursuant to the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715., as evidenced by Exhibit E to this Agreement.

C.      "Class" means the class certified by the District Court in the Action, namely, all persons who are or have been employed by Rite Aid as Store Managers in the State of California from May 9, 2001, until the date of Preliminary Approval of the Settlement.

D.      "Class Counsel" means Scott Edward Cole, Matthew R. Bainer, and Kevin R. Allen of Scott Cole & Associates, APC.

E.      "Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" mean the amounts awarded to Class Counsel by the District Court to compensate them for, respectively, their attorneys' fees and litigation expenses incurred in connection with the Action, including their pre-filing investigation, their filing of the Action and all related litigation activities, this Settlement, and all post-Settlement compliance procedures.

F.      "Class Data" means, for each Class Member, the Class Member's name, last-known mailing address and telephone number, Social Security number, and Rite Aid employee number; and, for the Class Period, the Class Member's dates of employment as a Rite Aid Store Manager in California and his or her Work Weeks during that period.

G.      "Class Member" is a member of the Class.

H.      "Class Notice" means, for Class Members who already have been provided with notice of certification of the Class and the opportunity to opt out of the Class but chose not to do so ("Existing Class Members"), the Notice of Proposed Settlement of Class Action, Preliminary Approval of Settlement, and Hearing

Date for Final Court Approval as evidenced by Exhibit A to this Agreement and incorporated by reference into this Agreement; and, for Class Members who have not already been provided with notice of certification of the Class and the opportunity to opt out of the Class but will be as part of the notice process under this Settlement ("New Class Members"), the Notice of Class Action and Proposed Settlement of Class Action, Preliminary Approval of Settlement, and Hearing Date for Final Court Approval as evidenced by Exhibit B to this Agreement and incorporated by reference into this Agreement.

I.      "Class Notice Packet" means the Class Notice, the Class Member Settlement Information Sheet, and, for New Class Members, the Election Not to Participate in Class Settlement form, as they appear as exhibits to this Agreement (other than formatting changes to facilitate printing by the Settlement Administrator).

J.      "Class Period" means the period of time from May 9, 2001, to the date of Preliminary Approval of the Settlement.

K.      "Class Representative Payment" means the special payment made to Plaintiff in his capacity as Class Representative to compensate him for initiating the Action, performing work in support of the Action, and undertaking the risk of liability for attorneys' fees and expenses in the event he was unsuccessful in the prosecution of the Action.

L.      "District Court" means the U.S. District Court, Northern District of California.

M.      "Effective Date" means the date by which all of the following have occurred:

    1.      Rite Aid has not voided the Settlement pursuant to section III.F.6. of this Agreement;

    2.      this Agreement is approved by the Judgment; and

    3.      the Judgment becomes Final.

N.      "Election Not to Participate in Class Settlement" means the form by which a New Class Member may elect to exclude himself or herself from the Class and the Settlement as evidenced by Exhibit D to this Agreement.

O.      "Final" means that the Settlement has been approved by the District Court and the last of the following dates, as applicable, has passed:

    1.      The last date on which a notice of appeal from the Judgment may be filed, and none is filed.

    2.      If a timely appeal from the Judgment is filed, the last of the following dates:

a.      the last date by which a petition for review by the U.S. Court of Appeals for the Ninth Circuit or the U.S. Supreme Court's decision affirming the Judgment may be filed, and none is filed;

b.      the last date by which a petition for a writ of *certiorari* to the United States Supreme Court of a decision by the U.S. Court of Appeal for the Ninth Circuit affirming the Judgment may be filed, and none is filed;

c.      if a petition for review by the U.S. Court of Appeals for the Ninth Circuit, or a petition for a writ of *certiorari* to the U.S. Supreme Court, seeking review of the Judgment or of the U.S. Court of Appeals for the Ninth Circuit's decision on an appeal from the Judgment is timely filed, the date on which the highest reviewing court renders its decision denying the petition (where the immediately lower court affirmed the Judgment) or affirming the Judgment without material modification.

P.      "Final Approval Hearing" means the hearing to be conducted by the District Court to determine whether to grant final approval of and implement the terms of this Agreement.

Q.      "Gross Settlement Amount" means the maximum amount of $6,900,000 to be paid by Rite Aid under this Agreement (including credit for accrued interest on the first installment payment, plus any interest accrued after Rite Aid makes the second installment payment after the Judgment becoming Final, as set forth in this Agreement.

R.      "Judgment" means the Order of Final Judgment and Dismissal with Prejudice entered by the District Court in the form evidenced by Exhibit G to this Agreement and incorporated by reference into this Agreement.

S.      "Rite Aid's Counsel" means Jeffrey D. Wohl, John C. Post, and Rishi N. Sharma of Paul, Hastings, Janofsky & Walker LLP.

T.      "Net Settlement Amount" means the Gross Settlement Amount less (i) the Class Representative Payment approved by the District Court; (ii) the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment approved by the District Court; (iii) the payment to the California Labor and Workforce Development Agency (the "LWDA") approved by the District Court; (iv) the Settlement Administrator's reasonable fees and expenses approved by the District Court; and (v) any other fees or expenses (other than attorneys' fees and expenses) incurred in implementing the terms and conditions of this Agreement and securing dismissal of the Action as awarded by the District Court.

U.      "Non-Participating Class Member" means a New Class Member who submits a valid and timely Election Not to Participate in Class Settlement.

V.      "Participating Class Member" means (i) an Existing Class Member, or (ii) a New Class Member who does not submit a valid and timely Election Not to Participate in Class Settlement.

W.      "Preliminary Approval of the Settlement" means the District Court's preliminary approval of the Settlement without material change.

X.      "Settlement" means the disposition of the Action and all related claims effectuated by this Agreement.

Y.      "Settlement Administrator" means the administrator proposed by the Parties and appointed by the District Court to administer the Settlement.

Z.      "Class Member Settlement Information Sheet" means an information sheet showing, for each Class Member, his or her Class Data and estimated Settlement Share, in the form evidenced by Exhibit C to this Agreement.

AA.     "Settlement Share" means each Participating Class Member's share of the Net Settlement Amount as provided by this Agreement.

BB.     "Work Week" means for each Class Member the weeks or fractional portion of a week during the Class Period that the Class Member was employed by Rite Aid as a Store Manager in California (and not on a leave of absence), rounded to four decimal points.

## II.   RECITALS

A.      On May 9, 2005, Plaintiff commenced the Action against Rite Aid in the Superior Court of California, Alameda County.  In the Action, Plaintiff alleged that Rite Aid, in violation of California wage-and-hour law and California Business and Professions Code section 17200 *et seq.*: failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to provide all legally required meal periods and rest breaks; and failed to provide accurate, itemized employee wage statements.  Plaintiff sought to certify a class composed of himself and similarly situated individuals and to recover from Rite Aid back wages, interest, penalties, and attorneys' fees and costs.

B.      On June 20, 2005, Rite Aid answered the Plaintiff's complaint in the Action, denying all of its material allegations.  Specifically, Rite Aid contended (and continues to contend) that a class as proposed by Plaintiff should not be certified; that the members of the proposed class were properly paid under federal and state law and not denied any meal periods and rest breaks; that Rite Aid did not fail to pay to any members of the proposed class who are former Rite Aid employees any wages allegedly due at the time of their termination; that Rite Aid provided accurate, itemized wage statements to members of the proposed class; that Rite Aid did not violate California Business and Professions Code section 17200 *et seq.*; and that Rite Aid is not liable for any of the penalties claimed or that could be claimed in the Complaint.

C.      On June 21, 2005, Rite Aid removed this action to the District Court, pursuant to the jurisdictional provisions of CAFA, 28 U.S.C. § 1332(d).

D.      On August 31, 2006, the District Court granted Plaintiff's motion to certify the Class and certified the Class under Rule 23(b)(3), Federal Rules of Civil Procedure, as composed of all individuals whom Rite Aid employed as a Store Manager in the State of California since May 9, 2001.

E.      In the course of the Action, the Parties have engaged in extensive discovery, including depositions of Plaintiff and a number of Rite Aid executives and representatives, site inspections, production of voluminous documents, and responses to written discovery requests.  In addition, each side has collected and produced to the other side scores of declarations executed by Class Members.

F.      Also in the course of the Action, the Parties have participated in two mediations presided over by Antonio C. Piazza of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder, and several rounds of direct negotiations before reaching the Settlement.   Based on the discovery taken in the Action and their own independent investigation and evaluation, Class Counsel are of the opinion that the Agreement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Rite Aid, and potential appellate issues.

G.      It is the mutual desire of the Parties to settle, compromise, and discharge—fully, finally, and forever—all disputes and claims raised in or related in any way to the Action.  In order to achieve a full and complete release of the released persons, the Class, including Plaintiff and each Class Member acknowledge that this Settlement is intended to include and resolve all claims arising from or related to the Action as more fully set forth in section III.G. of this Agreement.

H.      This Agreement represents a compromise and settlement of highly disputed claims.  Nothing in this Agreement is intended or will be construed as an admission by Rite Aid that Plaintiff's or the Class's claims in the Action have merit, that the Class should have been certified, or that Rite Aid bears any liability to Plaintiff or the Class on those claims or any other claims, or as an admission by Plaintiff that Rite Aid's defenses in the Action have merit.

Based on these Recitals, the Parties agree as follows:

## III.    SETTLEMENT TERMS AND CONDITIONS

A.      **Gross Settlement Amount.**   Subject to the terms and conditions of this Agreement, the Gross Settlement Amount that Rite Aid will pay under this Settlement is $6,900,000 (including credit for accrued interest on the first installment payment as provided by section III.B. of this Agreement).  All of the Gross Settlement Amount will be disbursed pursuant to this Agreement, and none of it will revert to Rite Aid.

B.    **Establishment and Funding of Settlement Escrow Account.**  Rite Aid will deposit the Gross Settlement Amount with the Settlement Administrator in two installments: (1) within five business days after the District Court grants preliminary approval of the Settlement, Rite Aid will deposit into an interest-bearing escrow account ("Settlement Escrow Account") established by the Settlement Administrator the first installment of $3,000,000; (2) within five business days after the Settlement becomes Final, Rite Aid will deposit into the Settlement Escrow Account the second installment of an amount equal to the difference between $6,900,000 and then-current balance of the Settlement Escrow Account (*i.e.*, $3,000,000 plus accrued interest to date) into the Settlement Escrow Account.  All monies so deposited into the Settlement Escrow Account will be used exclusively for purposes of payment of this Settlement, and no amount thereof will revert back to Rite Aid, except in the event that the Settlement becomes null and void, as provided in section III.F.1.d., III.F.6., III.F.7.c, III.F.9., or III.I.1. of this Agreement.

C.    **Payments from the Gross Settlement Amount.**  Subject to the terms and conditions of this Agreement, the Settlement Administrator will make payments out of the Gross Settlement Amount as follows:

1.    **To Plaintiff:**  In addition to his Settlement Share, the Settlement Administrator will pay to Plaintiff out of the Gross Settlement Amount his Class Representative Payment.  Plaintiff will apply to the District Court for an award of not more than $20,000 as his Class Representative Payment, which Rite Aid will not oppose.  If the District Court approves a Class Representative Payment of less than $20,000, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members.  Payroll tax withholding and deductions will not be taken from the Class Representative Payment and instead a Form 1099 will be issued to Plaintiff with respect to that payment.

2.    **To Class Counsel:**  The Settlement Administrator will pay to Class Counsel out of the Gross Settlement Amount their Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment.  Class Counsel will apply to the District Court for an award of not more than $2,300,000 (33-1/3% of the Gross Settlement Amount) as their Class Counsel Fees Payment and an amount not more than $75,000 as their Class Counsel Litigation Expenses Payment, and Rite Aid will not oppose their request.  If the District Court approves a Class Counsel Fees Payment or a Class Counsel Litigation Expenses Payment of less than $2,300,000 or $75,000, respectively, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members.  Payroll tax withholding and deductions will not be taken from the Class Counsel Fees and Expenses Payment and instead a Form 1099 will be issued to Class Counsel with respect to those payments.

3.     **To LWDA.**  The Settlement Administrator will pay to the LWDA out of the Gross Settlement Amount a payment as the LWDA's share of the settlement of civil penalties paid under this Agreement pursuant to the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* (the "LWDA Payment").  The Parties will apply to the District Court for an LWDA Payment of $10,000.  If the District Court approves an LWDA Payment of less than $10,000, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members.

4.     **To the Settlement Administrator.**  The Settlement Administrator will pay out of the Gross Settlement Amount to itself its reasonable fees and expenses as approved by the District Court.

D.     **Settlement Share.**  Subject to the terms and conditions of this Agreement, the Settlement Administrator will pay a Settlement Share from the Net Settlement Amount to each Participating Class Member as follows:

1.     **Calculation**.  The Settlement Share for each Participating Class Member will be based on (a) that Participating Class Member's total number of Work Weeks during the Class Period (b) divided by the aggregate number of Work Weeks of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

2.     **Withholding**.

a.     One-half of each Settlement Share (the "Wage Portion") is intended to settle each Participating Class Member's claims for unpaid wages.  Accordingly, the Wage Portion will be reduced by applicable payroll tax withholding and deductions, and the Settlement Administrator will issue to the Participating Class Member a Form W-2 with respect to the Wage Portion.  The employer's share of legally required payroll taxes for the Wage Portion will be paid by Rite Aid directly and not out of the Gross Settlement Amount.

b.     One-half of the Settlement Share (the "Non-Wage Portion") is intended to settle each Participating Class Member's claims for interest and penalties.  Accordingly, the Non-Wage Portion will not be reduced by payroll tax withholding and deductions; and, instead, the Settlement Administrator will issue to the Participating Class Member a Form 1099 with respect to the Non-Wage Portion.

3.     **Effect of Non-Participating Class Members.**  Non-Participating Class Members will receive no Settlement Share, and their election not to

participate will reduce neither the Gross Settlement Amount nor the Net Settlement Amount.

E.   **Appointment of Settlement Administrator.**  The Parties will ask the District Court to appoint Gilardi & Co., LLC., a qualified administrator, to serve as the Settlement Administrator.  As a condition of appointment, Gilardi & Co., LLC, will agree to be bound by this Agreement with respect to the performance of its duties and its compensation.  The Settlement Administrator's duties will include, but not necessarily be limited to, preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a National Change of Address search on any Class Notice Packet returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice Packet to the Class Member's new address; setting up a toll-free telephone number to receive calls from Class Members; receiving and reviewing for validity completed Elections Not to Participate in Class Settlement from New Class Members; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed Elections Not to Participate in Class Settlement; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; and otherwise administering the Settlement pursuant to this Agreement.  The Settlement Administrator will have the final authority to resolve all disputes concerning the calculation of a Participating Class Member's Settlement Share in accordance with section III.F.5. of this Agreement and subject to the dollar limitations set forth in this Agreement. The Settlement Administrator's reasonable fees and expenses, including the cost of printing and mailing the Class Notice Packet, as approved by the District Court, will be paid out of the Gross Settlement Amount.

F.   **Procedure for Approving Settlement**.

   1.   **Motion for Preliminary Approval of Settlement by the District Court**.

      a.   Within ten business days after full execution of the Agreement by the Parties, the Parties jointly will move the District Court for an order giving Preliminary Approval of the Settlement, setting a date for the Final Approval Hearing, approving the Class Notice, the form of Election Not to Participate in Class Settlement, and the CAFA Notice given by Rite Aid (the "Motion for Preliminary Approval"), and appointing the Settlement Administrator.

      b.   Within ten business days of the Parties' filing the Motion for Preliminary Approval, Rite Aid will, pursuant to CAFA, mail the CAFA Notice to the Attorney General of the United States and the appropriate state official in each state in which a Class Member resides at the time of notice.

      c.   At the hearing on the Motion for Preliminary Approval, the Parties will jointly appear, support the granting of the motion, and submit

an Order Granting Preliminary Approval of Settlement; Approval of Class Notice, Form of Election Not to Participate in Class Settlement, and CAFA Notice; and Setting Hearing for Final Approval of Settlement, in the form evidenced by Exhibit F to this Agreement and incorporated by reference into this Agreement.

d. Should the District Court decline to preliminarily approve all material aspects of the Settlement, either Party may void the Settlement.   In such event, the Parties will have no further obligations under it.

2. **Notice to Class Members.**   After the District Court enters its order granting Preliminary Approval of the Settlement, every Class Member will be provided with the Class Notice Packet (which will include the Class Notice applicable to him or her and completed to reflect the order granting Preliminary Approval of the Settlement; the Class Member Settlement Information Sheet completed to show the Class Member's Class Data; and, for New Class Members only, the form of Election Not to Participate in Class Settlement) as follows:

a. Not later than thirty days after the District Court enters its order granting Preliminary Approval of the Settlement, Rite Aid will provide to the Settlement Administrator the full names, last known addresses and telephone numbers, Social Security numbers, Rite Aid employee identification number, and the number of Work Weeks of all Class Members, and to Class Counsel the full names, last known addresses and telephone numbers, Rite Aid employee identification number, and the number of Work Weeks of all Class Members.  If any or all of the Class Data are unavailable to Rite Aid, Rite Aid will so inform Class Counsel and the Parties will make their best efforts to reconstruct or otherwise agree upon the Class Data prior to when it must be submitted to the Settlement Administrator.  If the Parties are unable to agree, the dispute will be resolved pursuant to the dispute-resolution procedure set forth in section III.F.5. of this Agreement.   This information will otherwise remain confidential and will not be disclosed to anyone, except as required to applicable taxing authorities, in order to carry out the reasonable efforts described in section III.F.2.c. of this Agreement, or pursuant to Rite Aid's express written authorization or by order of the District Court.

b. Not later than ten business days after receiving the Class Data, the Settlement Administrator will mail the Class Notice Packets to all Class Members via first-class regular U.S. Mail using the mailing address information provided by Rite Aid, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement.

c.   If a Class Notice Packet is returned because of an incorrect address, the Settlement Administrator will promptly, and not longer than ten days from receipt of the returned packet, search for a more current address for the Class Member and re-mail the Class Notice Packet to the Class Member.  The Settlement Administrator will use the Class Data and otherwise work with Rite Aid to find that more current address.  The Settlement Administrator will be responsible for taking reasonable steps, consistent with its agreed-upon job parameters, court orders, and fee, as agreed to with Class Counsel and according to the following deadlines, to trace the mailing address of any Class Member for whom a Class Notice Packet is returned by the U.S. Postal Service as undeliverable.  These reasonable steps will include, at a minimum, the tracking of all undelivered mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing to Class Members for whom new addresses are found.  If the Class Notice Packet is re-mailed, the Settlement Administrator will note for its own records and notify Class Counsel and Rite Aid's Counsel of the date and address of each such re-mailing as part of a weekly status report provided to the Parties.  Class Counsel will be entitled to receive from the Settlement Administrator any updated address information about a Class Member as the Settlement Administrator obtains such information.

d.   As part of its weekly status report, the Settlement Administrator will inform Class Counsel and Rite Aid's Counsel of completed Elections Not to Participate in Class Settlement it receives.

e.   Not later than the date by which the Parties file their joint motion for final approval of the Settlement, the Settlement Administrator will serve on the Parties and file with the Court a declaration of due diligence setting forth its compliance with its obligations under this Agreement.   Prior to the Final Approval Hearing, the Settlement Administrator will supplement its declaration of due diligence if any material changes occur from the date of the filing of its prior declaration.

3.   **Objections to Settlement; Elections Not to Participate in Class Settlement.**  Class Members may submit objections to the Settlement or, in the case of New Class Members only, Elections Not to Participate in Class Settlement, pursuant to the following procedures:

a.   **Objections to Settlement.**  The Class Notice will provide that Existing Class Members and, unless they elect not to participate in the Settlement, New Class Members, who wish to object to the Settlement, must file with the District Court and serve on counsel for the Parties not later than 45 days after the Settlement

Administrator mails the Class Notice Packets a written objection to the Settlement setting forth the grounds for the objection. The statement will also indicate whether the Class Member intends to appear and object at the Final Approval Hearing; failure to so indicate will constitute a waiver of the right to appear at the hearing. A Class Member who does not file and serve a written objection in the manner and by the deadline specified above will be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.

b.   **Election Not to Participate in Class Settlement.**   The Class Notice will provide that new Class Members who wish to exclude themselves from the Class and the Settlement must mail to the Settlement Administrator not later than 45 days after the Settlement Administrator mails the Class Notice Packets a signed and notarized Election Not to Participate in Class Settlement. If a question is raised about the authenticity of a signed Election Not to Participate in Class Settlement, the Settlement Administrator will have the right to demand additional proof of the Class Member's identity. A Non-Participating Class Member will not participate in or be bound by the Settlement and the Judgment. Rite Aid will remain free to contest any claim brought by the class member that would have been barred by this Agreement, and nothing in this Agreement will constitute or be construed as a waiver of any defense Rite Aid has or could assert against such a claim. A Class Member who does not complete and mail a timely Election Not to Participate in Class Settlement in the manner and by the deadline specified above will automatically become a Participating Class Member and be bound by all terms and conditions of the Settlement, including its release of claims, if the Settlement is approved by the District Court, and by the Judgment, regardless of whether he or she has objected to the Settlement.

c.   **Report.**   Not later than seven business days after the deadline for submission of Elections Not to Participate in Class Settlement, the Settlement Administrator will provide the Parties with a complete and accurate list of all Participating Class Members and Non-Participating Class Members.

4.   **No Solicitation of Objection, Election Not to Participate, Appeal.** Neither the Parties nor their respective counsel will solicit or otherwise encourage directly or indirectly any Class Member to object to the Settlement, submit an Election Not to Participate in Class Settlement, or appeal from the Judgment.

5. **Resolution of Disputes.**  If a Class Member disputes the number of Work Weeks stated for that Class Member in his or her Class Member Settlement Information Sheet, the Class Member must ask the Settlement Administrator to resolve the matter by returning the Class Member Settlement Information Sheet with a statement of the number of Work Weeks that he or she contends were worked and include with the Class Member Settlement Information Sheet any documentation the Class Member has to support his or her contention.  In the event of such a dispute, Rite Aid will manually review its payroll and personnel records to verify the correct number of Work Weeks.  Rite Aid's records will have a rebuttable presumption of correctness.   After consultation with Class Counsel, the Class Member and Rite Aid, the Settlement Administrator will make a determination of the Class Member's number of Work Weeks and that determination will be final, binding on the Parties and the Class Member, and non-appealable.

6. **Right of Rite Aid to Reject Settlement.**  If five percent or more of Class Members, or a number of Class Members whose Settlement Shares would be worth five percent or more of all Class Members' Settlement Shares if all Class Members were Participating Class Members, timely submit completed Elections Not to Participate in Class Settlement, Rite Aid will have the right, but not the obligation, to void the Settlement and the Parties will have no further obligations under the Settlement, including any obligation by Rite Aid to pay the Gross Settlement Amount, or any amounts that otherwise would have been owed under this Agreement, except that Rite Aid will pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that Rite Aid communicates to the Settlement Administrator and Class Counsel its election to void the Settlement.  Rite Aid will notify Class Counsel and the District Court whether it is exercising this right to void not later than 15 days after the Settlement Administrator notifies the Parties of the number of valid Elections Not to Participate in Class Settlement it has received.

7. **Additional Briefing and Final Approval**.

    a. Not later than thirty-eight days before the Final Approval Hearing, the Parties jointly will file with the District Court a motion for final approval of the Settlement (including a determination that Rite Aid complied with CAFA with respect to the CAFA notice), the LWDA Payment, and payment of the Settlement Administrator's reasonable fees and expenses ("Motion for Final Approval"); a memorandum in support of the Motion for Final Approval; and a proposed order granting the Motion for Final Approval in the form of the Judgment (Exhibit G to this Agreement).  Not later than thirty-eight days before the Final Approval Hearing Plaintiff and Class Counsel also will serve on Rite Aid and file with the District Court a motion for awards of the Class Representative Payment,

the Class Counsel Fees Payment, and the Class Counsel Litigation Expenses Payment pursuant to this Settlement; one or more memoranda in support of their motions; and a form of proposed order granting the motions.

b.      If any opposition to the Motion for Final Approval is filed, then not later than fourteen days before the Final Approval Hearing, the Parties jointly may file a reply in support of the Motion for Final Approval.  Rite Aid will not oppose any motions for awards of the Class Representative Payment, the Class Counsel Fees Payment, or the Class Counsel Litigation Expenses Payment so long as they are consistent with this Agreement; if, however, any opposition is filed, Plaintiff and Class Counsel may file a reply in support of their motions for the Class Representative Payment, the Class Counsel Fees Payment, and the Class Counsel Litigation Expenses Payment not later than fourteen days before the Final Approval Hearing.

c.      If the District Court does not grant final approval of the Settlement or grants final approval conditioned on any material change to the Settlement, then the Settlement may be voided by either Party, in which case the Parties will have no further obligations under the Settlement, including any obligation by Rite Aid to pay the second installment of the Gross Settlement Amount or any amounts that otherwise would have been owed under this Agreement (except that Rite Aid will pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that the Settlement is voided under this paragraph), and the Settlement Administrator will release to Rite Aid the first installment of the Gross Settlement Amount deposited into the Settlement Escrow Account and all accrued interest.  However, an award by the District Court of a lesser amount than that sought by Plaintiff and Class Counsel for the Class Representative Payment, the Class Counsel Fees Payment, or the Class Counsel Litigation Expenses Payment will not constitute a material modification to the Settlement within the meaning of this paragraph.

d.      After entry of the Judgment, the District Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

8.      **Waiver of Right to Appeal.**  Provided that the Judgment is consistent with the terms and conditions of this Agreement, Plaintiff and Participating Class Members who did not timely submit an objection to

the Settlement, Rite Aid, and their respective counsel hereby waive any and all rights to appeal from the Judgment, including all rights to any post-judgment proceeding and appellate proceeding, such as, but not limited to, a motion to vacate judgment, a motion for new trial, a motion for relief under Rule 60, Federal Rules of Civil Procedure and any extraordinary writ, and the Judgment therefore will become nonappealable at the time it is entered.  The waiver of appeal does not include any waiver of the right to oppose any appeal, appellate proceedings or post-judgment proceedings.  This paragraph does not preclude Plaintiff or Class Counsel from appealing from a refusal by the District Court to award the full amount of the Class Representative Payment, the Class Counsel Fees Payment, or the Class Counsel Litigation Expenses Payment sought by them.  If an appeal is taken from the Judgment, the time for consummation of the Settlement (including making the second installment payment of the Gross Settlement Amount) will be suspended until such time as their appeal is finally resolved and the Judgment becomes Final.

9. **Vacating, Reversal, or Material Modification of Judgment on Appeal or Review.**  If, after a notice of appeal, a petition for review, or a petition for *certiorari*, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Judgment such that there is a material modification to the Settlement, and that court's decision is not completely reversed and the Judgment is not fully affirmed on review by a higher court, then either Plaintiff or Rite Aid will have the right to void the Settlement, which the Party must do by giving written notice to the other Parties, the reviewing court, and the District Court not later than fourteen days after the reviewing court's decision vacating, reversing, or materially modifying the Judgment becomes Final.   A vacation, reversal, or modification of the District Court's award of the Class Representative Payment or the Class Counsel Fees Payment or Litigation Expenses Payment will not constitute a vacation, reversal, or material modification of the Judgment within the meaning of this paragraph, provided that Rite Aid's obligation to make payments under this Settlement will remain limited by the Gross Settlement Amount.

10. **Timing of Provision of Settlement Shares and Other Payments.** Within five business days after the Judgment becomes Final, Rite Aid will pay the second installment of the Gross Settlement Amount to the Settlement Escrow Account pursuant to section III.B. of this Agreement Within ten business days after the Judgment becomes Final, the Settlement Administrator will pay out of the Settlement Escrow Account the Class Representative Payment to Plaintiff; the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment to Class Counsel; the Settlement Shares to Participating Class Members; the LWDA Payment to the LWDA; and the Settlement Administrator's reasonable fees and expenses to the Settlement Administrator.

11.     **Uncashed Settlement Share Checks.**  A Participating Class Member must cash his or her Settlement Share check within 180 days after it is mailed to him or her.   If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Participating Class Member at his or her correct address.  If Participating Class Member's Settlement Share check is not cashed within 180 days after its last mailing to the Participating Class Member, the Settlement Administrator will send the Participating Class Member a letter informing him or her that unless the check is cashed in the next thirty days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed.  If the check remains uncashed by the expiration of the thirty-day period after this notice, the Settlement Claims Administrator will escheat the check to the State of California or any other State having jurisdiction over the Class Member's assets.

12.     **Final Report by Settlement Administrator to Court.**  Within ten days after final disbursement of all funds from the Gross Settlement Amount, the Settlement Administrator will serve on the Parties and file with the Court a declaration proving a final report on the disbursements of all funds from the Gross Settlement Amount.

G.     **Release of Claims**.

1.     **Plaintiff**.  As of the date of the Judgment, Plaintiff hereby fully and finally release Rite Aid, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns from any and all claims, known and unknown, including but not limited to claims arising from or related to his employment with or termination from Rite Aid or his compensation while a Rite Aid employee under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law (the "Plaintiff's Released Claims").   The Plaintiff's Released Claims include, but are not limited to, all claims arising from or related to the matters alleged in the Action.   The Plaintiff's Released Claims include all such claims for unpaid wages, including overtime compensation and minimum wages, missed meal-period and rest-break wages, and interest; penalties, including but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and attorneys' fees, costs, and expenses.  The Plaintiff's Released Claims include, but are not limited to, all such claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), federal common law, the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), California Labor Code sections 203, 226.7, 227.3, and 2698 *et seq.*, the wage orders of the California Industrial Welfare Commission, California Business and Professions Code section 17200 *et seq.*, and the law of

contract and tort. The Plaintiff's Released Claims also include all claims for lost wages and benefits, emotional distress, punitive damages, and attorneys' fees and expenses arising under federal, state, or local laws for discrimination, harassment, and wrongful termination, such as, by way of example only, (as amended) 42 U.S.C. section 1981, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the California Fair Employment and Housing Act; and the law of contract and tort.

2. **Participating Class Members.** As of the date of the Judgment, all Participating Class Members hereby fully and finally release Rite Aid, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims"). The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation and minimum wages, missed meal-period and rest-break wages or penalties, and interest; related penalties, including, but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and attorneys' fees, costs, and expenses. The Class's Released Claims include all such claims arising under the FLSA, federal common law, ERISA (but not ERISA claims unrelated to the other Class's Released Claims), California Labor Code sections 203, 226.7, 227.3, and 2698 *et seq.*, the wage orders of the California Industrial Welfare Commission, California Business and Professions Code section 17200 *et seq.*, and the law of contract and tort.

3. **Class Counsel.** As of the date of the Judgment, and except as otherwise provided by this Agreement, Class Counsel and any counsel associated with Class Counsel waive any claim to attorneys' fees, costs, and expenses against Rite Aid arising from or related to the Action, including but not limited to claims based on the FLSA, the California Labor Code, or any other statute or law (the "Class Counsel's Released Claims").

4. **Waiver of Rights Under California Civil Code Section 1542.** The Plaintiff's Released Claims, the Class's Released Claims, and the Class Counsel's Released Claims include all such claims, whether known or unknown by the releasing party. Thus, even if Plaintiff, a Participating Class Member, or Class Counsel discovers facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of their respective Plaintiff's Released Claims, Class's Released Claims, or Class Counsel's Released Claims, those claims will remain released and forever barred. Therefore, with respect to those released claims, Plaintiff, Participating Class Members, and Class Counsel

expressly waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

H.    **No Effect on Other Benefits.**  The Settlement Shares will not result in any additional benefit payments (such as 401(k) or bonus) beyond those provided by this Agreement to Plaintiff or Participating Class Members, and Plaintiff and Participating Class Members will be deemed to have waived all such claims, whether known or unknown by them, as part of their release of claims under this Agreement.  In addition, Plaintiff and Participating Class Members may not contribute any portion of their Settlement Shares to Rite Aid's 401(k) or other benefit plans.

I.    **Limitation on Public Statements About Settlement.**

1.    **Prior to Preliminary Approval.**  Prior to Preliminary Approval of the Settlement, Plaintiff and Class Counsel will not issue any press or other media releases, initiate any contact with the press, respond to any press inquiry, or have any communication with the press or anyone else about the Action and/or the fact, amount or terms of the Settlement.  If Plaintiff or his attorneys disclose to any non-party that (i) settlement has been reached or (ii) any of the terms of the Settlement, before the Settlement is preliminarily approved, Rite Aid may rescind the Settlement rendering it null and void.

2.    **After Preliminary Approval.**  At any time, including after Preliminary Approval of the Settlement, Plaintiff and his counsel will not issue a press or other media release or otherwise initiate any contact with the press or other news media concerning the Settlement, provided that this provision will not prevent Plaintiff's counsel from responding to Class Member inquiries about the Settlement, or once the Settlement has been granted final approval, including a description of the Settlement on their website or referencing the Settlement in other court filings.

J.    **Miscellaneous Terms**.

1.    **No Admission of Liability or Class Certification for Other Purposes**.

a.    This Agreement is entered into solely for the purpose of compromising highly disputed claims.  Nothing in this Agreement is intended or will be construed as an admission of liability or wrongdoing by Rite Aid, or an admission by Plaintiff that any of Plaintiff's claims were non-meritorious or any defense asserted by

Rite Aid was meritorious. Rite Aid denies that it has engaged in any unlawful activity, has failed to comply with the law in any respect, has any liability to anyone under the claims asserted in the Action, or that a class should have been certified in the Action. This Agreement, the Settlement, and the fact that Plaintiff and Rite Aid were willing to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (other than solely in connection with the Settlement).

b.    Whether or not the Judgment becomes Final, neither the Settlement, this Agreement, any document, statement, proceeding or conduct related to the Settlement or the Agreement, nor any reports or accounting of those matters, will be (i) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Rite Aid or any other beneficiary of the releases granted under this Agreement (the "Released Parties"), including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or (ii) disclosed, referred to or offered in evidence against any of the Released Parties, in any further proceeding in the Action, or any other civil, criminal or administrative action or proceeding except for purposes of effectuating the Settlement pursuant to this Agreement.

c.    This section and all other provisions of this Agreement notwithstanding, any and all provisions of this Agreement may be admitted in evidence and otherwise used in any and all proceedings to enforce any or all terms of this Agreement, or in defense of any claims released or barred by this Agreement.

2.    **Plaintiff's Pending Motion for Partial Summary Judgment**. When the Parties file their Motion for Preliminary Approval, Plaintiff will withdraw, without prejudice, his pending motion for partial summary judgment. In the unlikely event that the Parties cannot file their motion for preliminary approval before May 22, 2009, when Rite Aid's response to Plaintiff's pending motion for partial summary judgment is due, the Parties will take all necessary steps to ensure that the due date for Rite Aid's response to Plaintiff's pending motion for partial summary judgment is extended to permit first the filing and disposition of the motion for preliminary approval.

3.    **Integrated Agreement.**  After this Agreement is signed and delivered by all Parties and their counsel, this Agreement and its exhibits will constitute the entire agreement between the Parties relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any Party concerning this Agreement or

its exhibits other than the representations, warranties, covenants, and inducements expressly stated in this Agreement and its exhibits.

4.  **Attorney Authorization; Cooperation with Documentation.**  Class Counsel and Rite Aid's Counsel warrant and represent that they are authorized by Plaintiff and Rite Aid, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties will seek the assistance of the District Court, and in all cases all such documents, supplemental provisions and assistance of the District Court will be consistent with this Agreement.

5.  **Modification of Agreement.**  This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

6.  **Agreement Binding on Successors.**  This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

7.  **Applicable Law.**  All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of California, without giving effect to any conflict of law principles or choice of law principles.

8.  **Cooperation in Drafting.**  The Parties have cooperated in the drafting and preparation of this Agreement.  This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

9.  **Fair Settlement.**  The Parties and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms' length negotiations, taking into account all relevant factors, current and potential.

10.  **Use and Return of Documents and Data.**  All originals, copies, and summaries of documents and data provided to Class Counsel by Rite Aid in connection with the mediations or other settlement negotiations in this matter may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule.  Within thirty days after the

Judgment becomes Final, Class Counsel will return or destroy and confirm in writing to Rite Aid the destruction of all such documents and data (with the exception that Class Counsel may maintain one set of copies of such documents and data solely for archival purposes in satisfaction of ethical obligations imposed on them to do so, and not for any other purpose, including but not limited to any use of the documents and data in support of any other pending or future litigation or claim against Rite Aid).  Rite Aid will remind Class Counsel of their obligation to return or destroy all other copies within fifteen days after the Judgment becomes final.

11.     **Headings.**  The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.     **Notice.**  All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

*To Plaintiff and the Class:*

SCOTT EDWARD COLE
MATTHEW R. BAINER
KEVIN R. ALLEN
SCOTT COLE & ASSOCIATES, APC
1970 Broadway, Ninth Floor
Oakland, California  94612
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
Email: scole@scalaw.com
          mbainer@scalaw.com
          kallen@scalaw.com

*To Rite Aid:*

JEFFREY D. WOHL
JOHN C. POST
RISHI N. SHARMA
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, California  94105-3441
Telephone: (415) 856-7000
Facsimile:  (415) 856-7100
E-mail:jeffwohl@paulhastings.com
          johnpost@paulhastings.com
          rishisharma@paulhastings.com

13. **Execution in Counterpart.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts.  Facsimile signatures will be accepted if the original signature is provided within seven days.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.    EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated:  April ___, 2009.          PRAG TIERNO


_____

Dated:  April ___, 2009.          SCOTT EDWARD COLE
                                  MATTHEW R. BAINER
                                  KEVIN R. ALLEN
                                  SCOTT COLE & ASSOCIATES, APC


                         By:  _____
                                        Scott Edward Cole

Dated:  April ___, 2009.          RITE AID CORPORATION


                         By:  _____
                                        Marc Strassler
                              Executive Vice President, General Counsel, and
                                            Secretary

Dated:  April ___, 2009.          JEFFREY D. WOHL
                                  JOHN C. POST
                                  RISHI N. SHARMA
                                  PAUL, HASTINGS, JANOFSKY & WALKER LLP


                         By:  _____
                                        Jeffrey D. Wohl

13.   **Execution in Counterpart.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts. Facsimile signatures will be accepted if the original signature is provided within seven days. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.   EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated:  April _17_, 2009.         PRAG TIERNO


Dated:  April ___, 2009.          SCOTT EDWARD COLE
                                  MATTHEW R. BAINER
                                  KEVIN R. ALLEN
                                  SCOTT COLE & ASSOCIATES, APC


                                  By: _____
                                              Scott Edward Cole

Dated:  April ___, 2009.          RITE AID CORPORATION


                                  By: _____
                                              Marc Strassler
                                  Executive Vice President, General Counsel, and
                                                  Secretary

Dated:  April ___, 2009.          JEFFREY D. WOHL
                                  JOHN C. POST
                                  RISHI N. SHARMA
                                  PAUL, HASTINGS, JANOFSKY & WALKER LLP


                                  By: _____
                                              Jeffrey D. Wohl

13. **Execution in Counterpart.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts. Facsimile signatures will be accepted if the original signature is provided within seven days. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV. EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated: April ____, 2009.             PRAG TIERNO

_____

Dated: April **20**, 2009.           SCOTT EDWARD COLE
                                     MATTHEW R. BAINER
                                     KEVIN R. ALLEN
                                     SCOTT COLE & ASSOCIATES, APC

By: _____
                                     Scott Edward Cole

Dated: April ____, 2009.             RITE AID CORPORATION

By: _____
                                     Marc Strassler
                                     Executive Vice President, General Counsel, and
                                     Secretary

Dated: April ____, 2009.             JEFFREY D. WOHL
                                     JOHN C. POST
                                     RISHI N. SHARMA
                                     PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
                                     Jeffrey D. Wohl

13. **Execution in Counterpart.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts. Facsimile signatures will be accepted if the original signature is provided within seven days. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.   EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated: April ___, 2009.          PRAG TIERNO

 

_____

Dated: April ___, 2009.          SCOTT EDWARD COLE
                                 MATTHEW R. BAINER
                                 KEVIN R. ALLEN
                                 SCOTT COLE & ASSOCIATES, APC

 

By: _____
                        Scott Edward Cole

Dated: April 1\, 2009.           RITE AID CORPORATION

By: _____
                        Marc Strassler
              Executive Vice President, General Counsel, and
                                Secretary

Dated: April __, 2009.           JEFFREY D. WOHL
                                 JOHN C. POST
                                 RISHI N. SHARMA
                                 PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
                        Jeffrey D. Wohl